1    ROBBINS GELLER RUDMAN
       & DOWD LLP
2    DAVID C. WALTON (167268)
   BRIAN E. COCHRAN (286202)
3    655 West Broadway, Suite 1900
   San Diego, CA  92101
4    Telephone:  619/231-1058
   619/231-7423 (fax)
5    davew@rgrdlaw.com
   bcochran@rgrdlaw.com
6
   Attorneys for Plaintiff
7
   [Additional counsel on signature page.]
8
           UNITED STATES DISTRICT COURT
9
           CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| EDWARD A. BERG, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:20-cv-06780 |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |
| VELOCITY FINANCIAL, INC., CHRISTOPHER D. FARRAR, MARK R. SZCZEPANIAK, CHRISTOPHER J. OLTMANN, ALAN H. MANTEL, IAN K. SNOW, JOHN A. PLESS, BRANDON KISS, OGDEN PHIPPS, DANIEL J. BALLEN, JOHN P. PITSTICK, JOY L. SCHAEFER, SNOW PHIPPS GROUP, LLC, WELLS FARGO SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., JMP SECURITIES LLC and RAYMOND JAMES & ASSOCIATES, INC., | |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Edward A. Berg ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through counsel, which included, among other things, a review of the public Securities and Exchange Commission ("SEC") filings of Velocity Financial, Inc. f/k/a Velocity Financial, LLC ("Velocity" or the "Company"), press releases, analyst and media reports, and other public reports and information regarding the Company.  Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

1.      The claims alleged herein arise under §§11 and 15 of the Securities Act of 1933 (" 1933 Act") [15 U.S.C. §§77k and 77o].  This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act.

2.      This Court has personal jurisdiction over each of defendants and venue is proper in this County.  Velocity is headquartered in this District and defendants drafted the Registration Statement and Prospectus issued in connection with Velocity's initial public offering ("IPO") in part here, disseminated the misleading statements at issue here, and solicited stock purchasers here.  The Underwriter Defendants (as defined below) also have substantial operations and/or conduct substantial business in California (directly or via agents), and represented Velocity and all or some of the other defendants in carrying out the IPO.

## NATURE OF THE ACTION

3.      This is a securities class action on behalf of all purchasers of Velocity common stock pursuant and/or traceable to the Registration Statement and Prospectus, as amended, issued in connection with Velocity's January 2020 IPO (the "Offering Materials"), seeking to pursue remedies under the 1933 Act against Velocity, certain of its officers and directors (the "Individual Defendants"), Velocity's private equity

1  sponsor and controlling shareholder, and the underwriters of the IPO ("Underwriter

2  Defendants") (collectively "defendants").

3      4.     Velocity is a real estate finance company headquartered in Westlake

4  Village, California, that originates and manages loans issued to borrowers nationwide

5  to finance the purchase of small residential rental and commercial real estate

6  investment properties.  It also securitizes and sells some loans and holds others for

7  investment purposes.  As of the IPO, most of the Company's loans were

8  geographically concentrated in California, New York, Florida and New Jersey.

9  Defendants failed to disclose that at the time of the IPO the Company's non-

10 performing loans had dramatically increased in size from the figures provided in the

11 Offering Materials, as measured by both the amount of unpaid principal balance and

12 as a percentage of the Company's overall loan portfolio.  In addition, defendants

13 failed to provide any information to investors regarding the potential impact of the

14 novel coronavirus on Velocity's business and operations, despite the fact that the

15 international spread of the virus had already been confirmed at the time of the IPO.

16 Instead, the Offering Materials contained generic warnings that market turmoil could

17 eventually erupt and affect Velocity's business and told investors that Velocity

18 "operate[s] in a large and highly fragmented market with substantial demand for

19 financing and limited supply of institutional financing alternatives."

20     5.     In fact, the Offering Materials described a halcyon real estate market and

21 represented that the Company "ha[d] developed the highly-specialized skill set

22 required to effectively compete in this market," which supposedly "afforded [it] a

23 durable business model capable of generating attractive risk-adjusted returns for [its]

24 stockholders throughout various business cycles."  But this portrayal was materially

25 misleading, because an increasing proportion of Velocity's loans had entered non-

26 accrual status (meaning that they were at least 90 days past due) and the Company

27 was not uniquely well positioned to weather the brewing storm.  At the time of the

28 IPO, the unpaid principal amount of non-performing loans held on the Company's

1  balance sheet had nearly ***doubled*** year over year.  In addition, the purported demand

2  for Velocity's loan originations was temporary and short-lived, as borrowers took

3  advantage of declining interest rates as the coronavirus continued to spread.  Indeed,

4  the U.S. regions where Velocity had historically originated, and continued to

5  originate, most of its loans were among the most vulnerable to – and ultimately the

6  hardest hit by – the virus.

7      6.    The failure to disclose the substantial and growing proportion of the

8  Company's loans that were non-performing and/or on non-accrual status as of the IPO

9  rendered the statements contained in the Offering Materials regarding the quality of

10  the Company's loan portfolio and underwriting practices materially misleading.

11  Moreover, the failure to disclose information concerning the onset of the coronavirus

12  pandemic, or its actual and potential implications for the Company's operational and

13  financial condition and prospects, rendered the Offering Materials' positive

14  descriptions of the market, demand for investor loans for commercial real estate, and

15  the Company's business materially incomplete and misleading.  These developments,

16  risks and uncertainties, which existed at the time of the IPO but were not disclosed to

17  investors in connection with the IPO, had a material adverse effect on Velocity's

18  business, operations, and financial results.

19      7.    By May 15, 2020, Velocity stock closed at just $2.53 per share – more

20  than ***80% below*** the price investors paid for the stock in the IPO just four months

21  previously.  This action seeks to recover damages for Velocity investors.

22                              **PARTIES**

23      8.    Plaintiff Edward A. Berg purchased Velocity common stock pursuant

24  and/or traceable to the Offering Materials and has been damaged thereby.

25      9.    Defendant Velocity Financial, Inc. is a real estate finance company

26  headquartered in California that primarily originates and manages loans secured by

27  one-to-four unit residential retail and small commercial properties.  Before the IPO,

28  Velocity was a limited liability company known as Velocity Financial, LLC.

Immediately before completing the IPO, Velocity converted into a corporation with the same senior executives and several of the same directors, as well as two directors identified in the Offering Materials as director nominees.  Velocity operates its business through subsidiaries and other associated entities, including Velocity Commercial Capital, LLC, which does business as Velocity Mortgage Capital.

10.    Defendant Christopher D. Farrar was Velocity's Chief Executive Officer ("CEO") at the time of the IPO and became a director of the Company in connection with the IPO.

11.    Defendant Mark R. Szczepaniak was Velocity's Chief Financial Officer ("CFO") at the time of the IPO.

12.    Defendant Christopher J. Oltmann was Velocity's Chief Accounting Officer ("CAO") at the time of the IPO.

13.    Defendant Alan H. Mantel was a member of Velocity's pre-IPO Board of Managers.  He was also a Partner at defendant Snow Phipps (defined below). Immediately before the IPO closed, he became Chairman of the Board of Directors when Velocity converted from a limited liability company to a corporation.

14.    Defendant Ian K. Snow was a member of Velocity's pre-IPO Board of Managers.  He was also a co-founding Partner at defendant Snow Phipps and the managing member of the General Partner of the affiliated Snow Phipps funds that held its Velocity investment.

15.    Defendant John A. Pless was a member of Velocity's pre-IPO Board of Managers.  He was also a Partner at defendant Snow Phipps.  Immediately before the IPO closed, he became a member of the Board of Directors when Velocity converted from a limited liability company to a corporation.

16.    Defendant Brandon Kiss was a member of Velocity's pre-IPO Board of Managers.  He was also a Managing Director at defendant Snow Phipps.

17.    Defendant Ogden Phipps was a member of Velocity's pre-IPO Board of Managers.  He was also a co-founding Partner at defendant Snow Phipps.

18.     Defendant Daniel J. Ballen was a member of Velocity's pre-IPO Board of Managers.  Immediately before the IPO closed, he became a member of the Board of Directors when Velocity converted from a limited liability company to a corporation.

19.     Defendant John P. Pitstick ("Pitstick") was identified in the Offering Materials as a person who would become a member of the Board of Directors when Velocity converted from a limited liability company to a corporation.  He consented to be named in the Offering Materials as a person about to become a director.

20.     Defendant Joy L. Schaefer ("Schaefer") was identified in the Offering Materials as a person who would become a member of the Board of Directors when Velocity converted from a limited liability company to a corporation.  She also previously served as an Operating Partner at defendant Snow Phipps.  She consented to be named in the Offering Materials as a person about to become a director.

21.     The defendants identified in ¶¶10-20 above are referred to herein as the "Individual Defendants.  All of the Individual Defendants, other than defendants Pitstick and Schaefer (who were named as incoming directors) signed the Registration Statement for the IPO.  Each of the Individual Defendants also reviewed and helped prepare the Offering Materials and, as directors and/or executive officers of the Company, participated in the solicitation and sale of the Company's common stock to investors in the IPO for their own financial benefit and the financial benefit of Velocity.

22.     Defendant Snow Phipps Group, LLC ("Snow Phipps") is a private equity firm that specializes in mid-market control investments and takes an active role in managing its investments.  Defendant Snow Phipps sponsored the IPO and was the controlling shareholder of Velocity immediately prior to the IPO, beneficially owning more than 60% of the Company's shares through affiliated funds.  Defendant Snow Phipps continued to be the Company's largest shareholder after the IPO.  Defendant Snow Phipps also cemented its control over the Company through various shareholder

- 5 -

1   agreements and was entitled to nominate two directors to Velocity's Board.  As
2   acknowledged in the Offering Materials, "the degree of control on our board of
3   directors held by Snow Phipps . . . may be greater than their proportionate ownership
4   of our common stock."

5       23.    Defendants Wells Fargo Securities, LLC, Citigroup Global Markets Inc.,
6   JMP Securities, LLC and Raymond James & Associates, Inc. (the "Underwriter
7   Defendants") served as underwriters for the IPO.  Collectively, they sold more than
8   8.3 million Velocity shares in the IPO at $13 per share and shared over $7.5 million in
9   underwriting discounts and commissions.  Their failure to conduct adequate due
10  diligence in connection with the IPO and the preparation of the Offering Materials
11  was a substantial factor leading to the harm complained of herein.

12                          **SUBSTANTIVE ALLEGATIONS**

13  **Velocity's Business**

14      24.    Based in Westlake Village, California, Velocity is a real estate finance
15  company that issues, manages, and securitizes loans used by borrowers to finance the
16  purchase of investment properties – primarily single-family rental homes with one to
17  four units and small commercial properties.  It originates loans nationwide across a
18  network of 3,000 independent mortgage brokers that refer borrowers who require
19  financing to Velocity.

20      25.    As a real estate lender, Velocity's underwriting guidelines and practices
21  are of the utmost importance to its business and financial performance.  The Company
22  portrayed itself to investors as a disciplined lender in the underserved niche market of
23  small commercial properties and residential rental units.   Velocity's portfolio
24  contained an average loan balance of only $323,000 as of September 30, 2019.  Many
25  established real estate lenders focus on financing large real estate purchases because
26  of the risks and complexities associated with lending to individual investors and small
27  businesses.  However, Velocity assured prospective shareholders that it implemented a
28  hands-on, data-driven approach to provide effective due diligence in its underwriting

1  processes, weed out potentially troublesome borrowers, and construct a high-quality
2  loan portfolio to maximize potential yields.

3      26.    In the lead up to the IPO, the Company rapidly expanded its loan
4  portfolio.  As of September 30, 2019, the Company claimed to have a total net loan
5  portfolio worth $1.9 billion, an increase of $300 million over the preceding nine
6  months and an increase of 90% over the Company's $1 billion loan portfolio as of
7  December 31, 2016.  This allowed the Company to generate $113 million in interest
8  income for the nine months ended September 30, 2019, with a healthy 8.82% portfolio
9  yield.  Importantly, Velocity had grown its loan portfolio while also consistently
10 increasing its portfolio yield every year since 2016.  Furthermore, Velocity non-
11 performing loans had an unpaid principal balance of only $118 million, or just 6.13%
12 of the Company's overall portfolio.  Velocity's ability to continue to grow its loan
13 portfolio and generate profitable, performing loans was critical to its future business
14 and prospects.

15     27.    The following charts adapted from the Offering Materials show the
16 geographic dispersion and original amount of loans held for investment and sale as of
17 September 30, 2019:

18
19
20
21
22
23
24
25

**Loans Held For Investment**
**As of September 30, 2019**



**Loans Held For Sale**
**As of September 30, 2019**



26
27
28




28.     The Company's primary product is a 30-year amortizing term loan with a three-year fixed-rate period, which floats at a spread to the prime rate thereafter (subject to a floor equal to the starting fixed rate), used to finance long-term real estate investments.  Borrowers use this product to finance stabilized long-term real estate investments.  In March 2017, the Company began originating short-term interest-only loans used for acquiring, repositioning or improving the quality of one-to-four unit residential investment properties.  This product is an interim solution for borrowers and/or properties that do not meet the investment criteria of the Company's primary 30-year product.

29.     Velocity also holds loans in its investment portfolio and securitizes and sells loans.  As of September 30, 2019, one-to-four unit residential rental loans comprised 46.8% of the Company's "held for" investment loan portfolio, with mixed-use and multi-family properties representing 13.7% and 11.1%, respectively (and no other category exceeding 10%).  By geography, the principal balance of Velocity's loans held for investment were concentrated 23.6% in New York, 22.2% in California, 12.3% in Florida, and 8.2% in New Jersey.

30.     By contrast, Velocity has historically aggregated and sold to institutional investors its short-term interest-only loans.  During the nine months ended September 30, 2019 and September 30, 2018, the Company originated $215.6 million and $89.4 million of loans held for sale and sold $114.0 million and $28.1 million of loans held for sale, respectively.  The Offering Materials stated that the Company was evaluating

long-term financing alternatives for such loans and might retain such loans in the future to earn a longer term spread.

**Velocity's IPO**

31.     Velocity filed the Registration Statement on Form S-1 with the SEC on October 18, 2019.  Following several amendments, the Registration Statement was declared effective by the SEC on January 16, 2020.  On January 17, 2020, the Company filed its final Prospectus, dated January 16, 2020 (which incorporated and formed part of the final Registration Statement), with the SEC.

32.     Together, the Offering Materials were used to sell over 8.3 million shares of Velocity common stock to the investing public (including the full exercise of the Underwriter Defendants' over-allotment option) at a price of $13 per share, generating over $108 million in gross offering proceeds.

**The Materially Misleading Offering Materials**

33.     The Offering Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing their preparation.

34.     For example, the Offering Materials highlighted the Company's purportedly "disciplined" underwriting policies and practices, which they claimed "differentiated" Velocity's business from its competitors.  They listed Velocity's "Customized Technology and Proprietary Data Analytics," which purportedly positioned Velocity "for sustainable, long-term growth" at the time of the IPO, as one of the Company's key "Competitive Advantages."  The Offering Materials continued in pertinent part:

> ***Our underwriting approach focuses on generating attractive***
> ***returns while minimizing credit losses and is enhanced by automation***
> ***through the extensive use of customized systems to power automation***
> ***and drive our use of data analytics.  We apply the same disciplined due***

1      *diligence and underwriting process to all loans we review, regardless of*

2      *whether they are originated or acquired*.  Our asset-driven underwriting

3      philosophy encompasses property level due diligence, including lease

4      and rent reviews, local market liquidity and trend assessment and a

5      rigorous valuation process.  In addition, we perform individual borrower

6      diligence, including credit review, evaluation of experience and asset

7      verification.  *We believe our extensive access to proprietary data gives*

8      *us a differentiated perspective and underwriting ability*.[1]

9      35.     The Offering Materials emphasized the growth of the Company's loan

10     portfolio in the lead-up to the IPO and the consistent increase in the Company's

11     portfolio yield.  The following chart of Velocity's "key performance metrics" was

12     provided in the Offering Materials:

13

14

| Key Performance Metrics | Nine Months Ended September 30, | | Year Ended December 31, | | |
|---|---|---|---|---|---|
| | 2019 | 2018 | 2018 | 2017 | 2016 |
| | ($ in thousands) | | | | |
| Average loans(1) | $1,715,172 | $1,387,535 | $1,429,877 | $1,167,999 | $944,437 |
| Portfolio yield(2) | 8.82% | 8.76% | 8.72% | 8.38% | 8.30% |
| Average debt — portfolio related(3) | $1,529,009 | $1,192,289 | $1,234,818 | $ 965,987 | $802,683 |
| Average debt — total company(4) | $1,660,837 | $1,319,883 | $1,362,412 | $1,090,532 | $914,467 |
| Cost of funds — portfolio related(5) | 5.34% | 5.01% | 5.07% | 4.93% | 4.66% |
| Cost of funds — total company(6) | 5.76% | 5.53% | 5.57% | 5.62% | 5.56% |
| Net interest margin — portfolio related(7) | 4.06% | 4.46% | 4.34% | 4.30% | 4.34% |
| Net interest margin — total company(8) | 3.24% | 3.50% | 3.41% | 3.13% | 2.92% |
| Charge-offs(9) | 0.03% | 0.03% | 0.03% | 0.09% | 0.13% |
| Pre-tax return on equity(10)(11) | 15.8% | 15.8% | 14.3% | 10.8% | 9.9% |
| Return on equity(11) | 11.1% | 8.6% | 7.8% | 10.8% | 9.9% |

20     (Footnotes omitted.)

21     36.     The Offering Materials also stated that Velocity's total loan portfolio had

22     continued to increase in the fourth quarter of 2020 – the quarter immediately prior to

23     the IPO – and that, despite the Company's rapid growth in loan originations, its non-

24     performing loans as a proportion of total loans had remained within a moderate range

25     during the quarter with a midpoint of just 6.7%.  The Offering Materials stated in

26     pertinent part:

27     _____

28     [1]     Emphasis has been added unless otherwise noted.

*Estimates for the Year Ended December 31, 2019*

*We expect to report total loan originations of at least $1,009.0 million for the year ended December 31, 2019*, compared to total loan originations of $737.3 million for the year ended December 31, 2018, and $554.7 million for the year ended December 31, 2017.

*We expect to report total loans, as measured by unpaid principal balance, of at least $2,055.0 million as of December 31, 2019*, compared to total loans, as measured by unpaid principal balance, of $1,928.2 million as of September 30, 2019, and $1,631.3 million as of December 31, 2018.  *We expect to report non-performing loans between 6.50% and 6.90% of total loans, as measured by unpaid principal balance, as of December 31, 2019*, compared to non-performing loans of 6.13% as of September 30, 2019, and of 5.85% as of December 31, 2018.  Non-performing loans includes all loans that are 90 or more days past due, in bankruptcy or in foreclosure.

*We expect to report net income between $16.8 million and $18.6 million for the year ended December 31, 2019*, compared to net income of $10.5 million for the year ended December 31, 2018, and $14.0 million for the year ended December 31, 2017.

37.     The statements in ¶¶34-36 above were materially false and misleading because, as of the date of the IPO, a significantly higher proportion of Velocity's total loan portfolio had become non-performing.  Indeed, the unpaid principal amount of non-performing loans had approximately *doubled* year over year and was accelerating at the time of the IPO.  *Nearly 10%* of Velocity's entire loan portfolio was on track to enter non-accrual status within months of the IPO as the Company's recent loan originations seasoned – with grave, adverse implications for the Company's net income, earnings and portfolio yield.  Notably, non-accrual occurs after 90 days of delinquency, meaning that the high proportion of non-accrual loans acknowledged

1   after the IPO had already entered delinquency as of the IPO.  Furthermore, these
2   adverse trends were the result of Velocity's rapid growth in its loan portfolio prior to
3   the IPO and deficiencies in the Company's underwriting practices and procedures that
4   existed at the time of the IPO.  Although the rapid loan growth was highlighted to
5   investors in the Offering Materials, defendants misleadingly failed to disclose the
6   rapidly expanding proportion of these loans then entering non-accrual status and the
7   adverse implications for the Company's business and financial results.

8       38.   In addition, the Offering Materials favorably described the Company's
9   market as of the IPO, stating that Velocity "operate[s] in a large and highly
10  fragmented market with substantial demand for financing and limited supply of
11  institutional financing alternatives."  They also represented that the Company "ha[d]
12  developed the highly-specialized skill set required to effectively compete in this
13  market," claiming the Company had "a durable business model capable of generating
14  attractive risk-adjusted returns for [its] stockholders throughout various business
15  cycles."

16      39.   Under the heading "**Our Market Opportunity**," the Offering Materials
17  also favorably portrayed the market conditions facing the Company and Velocity's
18  unique ability to capitalize on these market conditions, stating in pertinent part:

19          We believe that there is a substantial and durable market
20      opportunity for investor real estate loans across 1-4 unit residential rental
21      and small commercial properties, and that our institutionalized approach
22      to serving these fragmented market segments underpins our long-term
23      business strategy.  Our growth to date has validated the need for scaled
24      lenders with dedication to individual investors who own ten or fewer
25      properties, a base which we believe represents the vast majority of
26      activity across our core market.

27      40.   Moreover, the Offering Materials relied in substantial part on outdated
28  information in describing the condition of the residential and commercial real estate

markets and industry demand.  In a section entitled "1-4 Unit Residential Rental Properties," for example, the Offering Materials presented "statistical and economic market data and industry forecasts and projections" derived from a market study, prepared in connection with the IPO, based on data available as of September 2019. Likewise, in a section entitled "Small Commercial Properties," the Offering Materials presented information of a similar type also derived from a market study, prepared in connection with the IPO, based on data available as of September 2019.

41.     By the effective date of the Offering Materials, however, the coronavirus was already quickly spreading around the world and invading the United States, threatening to disrupt the locations where Velocity maintained offices and had historically originated most of its loans.  It was misleading for the Offering Materials to describe a robust market and strong demand for real estate investor loans when those conditions were evidently not realistic given the evolving nature of developments and circumstances arising from the fast-spreading coronavirus.  Rather, those conditions were short-lived and temporary, and the coronavirus presented uncertainties and risks that rendered unreasonable the Offering Materials' representations that the Company's operations were uniquely positioned to weather the worsening storm.

42.     Yet the Offering Materials failed to disclose any information concerning the onset of the coronavirus, including whether the coronavirus was adversely impacting the real estate market or the Company's business, operations or financial condition.  Nor did the Offering Materials disclose how the coronavirus might adversely impact the real estate market or the Company.  Instead, the Offering Materials contained generic risk warnings, applicable to any company operating in the real estate industry, that "conditions that negatively impact this market may reduce demand for our loans and may adversely impact our business, results of operations and financial condition" and, further, that "difficult conditions in the real estate markets, the financial markets and the economy generally may adversely impact our

business results of operations and financial condition."   This language did not adequately warn purchasers of common stock in connection with the IPO of the issues Velocity was then facing as a result of the coronavirus.

43.   The undisclosed adverse facts and circumstances detailed above presented known trends, uncertainties and risks that required disclosure in the Offering Materials.   Specifically, Item 303 of SEC Regulation S-K required the Company to disclose "any known trends or uncertainties that have had or that [Velocity] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."   Moreover, Item 105 of Regulation S-K required disclosure in the Offering Materials of "the most significant factors that ma[d]e an investment in [the IPO] speculative or risky," and an explanation of "how the risk affect[ed] [Velocity] or the securities being offered." The Offering Materials failed to disclose material facts necessary to apprise common stock purchasers of the true risks inherent in investing in the Company

44.   These issues arose from circumstances existing before the IPO, which were known by defendants and were in fact quickly worsening at the time of the IPO the material adverse effects on the Company's business and financial results, yet defendants fail to disclose them to investors until after the IPO.

45.   On March 31, 2020, Velocity stated that it would delay the filing of its 2019 annual report "due to the current economic environment, including circumstances related to the novel coronavirus (COVID-19) global outbreak."

46.   On April 6, 2020, Velocity announced that it had sold $45 million in preferred stock and warrants to its two largest shareholders, including defendant Snow Phipps, and amended the terms of its warehouse facilities in order to improve the Company's balance sheet and liquidity profile, citing coronavirus as a factor that could materially and adversely affect its financial results.

47.   On April 7, 2020, Velocity filed its 2019 annual report on Form 10-K, which belatedly provided extensive risk warnings and disclosures relating to the

1  coronavirus, including a description of uncertainties facing the business.  These risks

2  should have been provided to investors in the Offering Materials but were not.

3      48.   On April 8, 2020, Velocity issued a release providing the Company's

4  financial and operational results for the fourth quarter and full year 2019.  The release

5  stated that the Company had suspended all loan origination operations due to market

6  volatility.  Velocity also stated that it was experiencing enhanced delinquencies in its

7  loan portfolio and had implemented various strategies to attempt to "'address this

8  challenge.'"  In presentation materials accompanying the results, Velocity also stated

9  that its non-performing loans had increased 20% during the quarter to 6.88% of the

10 Company's total loan portfolio, at the top of the range provided in the Offering

11 Materials.  The Company further stated that even "[h]igher delinquencies are expected

12 from the COVID-19 pandemic."

13     49.   On May 13, 2020, Velocity issued a release and investor presentation and

14 held an earnings call providing the Company's financial and operational results for the

15 first quarter of 2020 – the *same quarter* in which the IPO was conducted.  The

16 Company stated that its net income decreased 50% sequentially during the quarter to

17 just $2.6 million.  The Company also confirmed that the suspension of loan

18 originations would continue for an indeterminate length of time, effectively halting all

19 potential growth in the Company's loan portfolio.  In addition, the Company stated

20 that its proportion of non-performing loans had accelerated to $174 million, nearly

21 double the unpaid principal amount year over year, and constituted 8.17% of the

22 Company's total portfolio, 252 basis points over the prior year.  Velocity's portfolio

23 yield also fell 32 basis points sequentially to 8.57% due in substantial part to the rising

24 number of non-performing loans.

25     50.   During the earnings call to discuss the results, Velocity executives further

26 stated that the proportion of non-performing loans had continued to substantially

27 increase and stood at a staggering *9.9%* of the Company's total portfolio by the end of

28 April 2020.  Management also confirmed that these adverse results were known and

expected as of the IPO, which they characterized as largely due to ordinary portfolio "seasoning" above and beyond any effects of the COVID-19 pandemic, even though they were not disclosed in the Offering Materials.  The Company also increased its loan loss reserve by more than 50%, largely due to expected losses from the COVID-19 pandemic, indicating that the adverse trends and significant loan deterioration were likely to continue.

51.     Velocity's stock price declined significantly subsequent to the IPO.  By May 15, 2020, Velocity stock closed at just $2.53 per share – more than ***80% below*** the price investors paid for Velocity shares in the IPO just four months previously.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action on behalf of all purchasers of Velocity common stock pursuant and/or traceable to the Offering Materials (the "Class").  Excluded from the Class are defendants and their families; the officers, directors and affiliates of defendants and members of their immediate families; the legal representatives, heirs, successors or assigns of any of the foregoing; and any entity in which any defendant has or had a controlling interest.

53.     The members of the Class are so numerous that joinder is impracticable. Velocity common stock is actively traded on the NYSE and millions of shares were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through discovery, plaintiff believes there are hundreds, if not thousands, of members in the Class.  Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

54.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a)     whether defendants violated the 1933 Act, as alleged herein;

(b)     whether the Offering Materials misrepresented and/or omitted material information in violation of the 1933 Act; and

(c)     whether and to what extent Class members have sustained damages, as well as the proper measure of damages.

55.     Plaintiff's claims are typical of the claims of the Class, as all Class members were similarly affected by defendants' conduct.

56.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in securities class actions.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged.  There will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

58.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

59.     This Count is brought under §11 of the 1933 Act [15 U.S.C. §77k], on behalf of the Class, against all defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

60.     The Registration Statement for the IPO, which was incorporated in and formed part of the Offering Materials, contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

61.     Velocity is the registrant for the IPO.  Defendants were responsible for the contents and dissemination of the Offering Materials.  Defendant Snow Phipps was the controlling shareholder and private equity sponsor of Velocity at the time of the IPO.  The Individual Defendants signed or authorized the signing of the Registration Statement and/or were designated as director-nominees, including by defendant Snow Phipps.  The Underwriter Defendants marketed and underwrote the IPO and sold stock to plaintiff and the Class.

62.     As the issuer of the shares, Velocity is strictly liable to plaintiff and the Class for the Registration Statement's material misstatements and omissions. Signatories of the Registration Statement, and possibly other defendants, may also be strictly liable to plaintiff and the Class for such material misstatements and omissions. None of the defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Registration Statement were complete, accurate or non-misleading.

63.     By reason of the conduct alleged herein, defendants violated §11 of the 1933 Act.  Plaintiff and the Class members purchased common stock pursuant and/or traceable to the Registration Statement and have sustained damages as a result.  The value of the stock has declined substantially subsequent and due to defendants' violations.  At the time of their purchases, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

64.     Less than one year has elapsed from the time that plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that plaintiff filed this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this action.

## COUNT II

### For Violation of §15 of the 1933 Act
### Against Velocity, the Individual Defendants and Snow Phipps

65.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

66.     This Count is brought under §15 of the 1933 Act [15 U.S.C. §77o], against Velocity, the Individual Defendants and Snow Phipps.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

67.     As detailed herein, each of defendants committed primary violations of the 1933 Act by committing conduct in contravention of §11 of the 1933 Act.

68.     The Individual Defendants were each control persons of Velocity by virtue of their positions as directors, senior officers and/or significant shareholders of the Company.  They each had direct and/or indirect business and/or personal relationships with other directors, officers and/or major shareholders of the Company. The Company also controlled the Individual Defendants, given the influence and control the Company possessed and exerted over the Individual Defendants and all of its employees.

69.     Defendant Snow Phipps was the controlling shareholder of the Company at the time of the IPO and sponsored the IPO.  Immediately prior to the IPO, Snow Phipps beneficially owned a majority of Velocity's stock and entered into shareholder agreements with Velocity in order to cement and expand its control over the Company.  In addition, Snow Phipps possessed the ability to nominate two directors to the Velocity Board and controlled the actions of the Individual Defendants affiliated with Snow Phipps, including the managers and directors of Velocity appointed by Snow Phipps to do its bidding on the Board.

1    70.    By reason of the conduct alleged herein, these defendants violated §15 of

2    the 1933 Act, and plaintiff and the Class have suffered harm as a result.

3                                    **PRAYER FOR RELIEF**

4          WHEREFORE, plaintiff, individually and on behalf of the proposed Class,

5    respectfully prays for judgment against defendants as follows:

6          A.    Determining that this action is a proper class action, designating plaintiff

7    as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the

8    Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

9          B.    Awarding plaintiff and the Class compensatory damages against all

10   defendants, jointly and severally, for all damages sustained as a result of defendants'

11   wrongdoing, in an amount to be proven at trial, together with prejudgment interest

12   thereon;

13         C.    Awarding plaintiff and the Class their reasonable costs and expenses

14   incurred in this action, including, but not limited to, attorneys' fees and costs incurred

15   by consulting and testifying expert witnesses; and

16         D.    Granting such other, further and/or different relief as the Court deems

17   just and proper.

18                                      **JURY DEMAND**

19         Plaintiff hereby demands a trial by jury.

20   DATED:  July 29, 2020                  ROBBINS GELLER RUDMAN
                                              & DOWD LLP
21                                          DAVID C. WALTON
                                            BRIAN E. COCHRAN
22

23
                                                  *s/Brian E. Cochran*
24                                          BRIAN E. COCHRAN

25                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
26                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
27                                          davew@rgrdlaw.com
                                            bcochran@rgrdlaw.com
28

                                            - 20 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
irussello@rgrdlaw.com

BRONSTEIN, GEWIRTZ &
  GROSSMAN, LLP
PERETZ BRONSTEIN
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

EDWARD A. BERG ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| <u>Security</u> | <u>Transaction</u> | <u>Date</u> | <u>Price Per Share</u> |
|---|---|---|---|

*See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __29__ day of July, 2020.

_____
EDWARD A. BERG

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date<br>Acquired | Amount of<br>Shares Acquired | Price |
|---|---|---|
| 01/17/2020 | 200 | $13.97 |
| 02/28/2020 | 300 | $12.97 |
| 03/05/2020 | 500 | $12.72 |
| 04/03/2020 | 500 | $2.40 |

Prices listed are rounded to two decimal places.