JAMES G. KREISSMAN (206740)
jkreissman@stblaw.com
STEPHEN P. BLAKE (260069)
sblake@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA  94304
Telephone: (650) 251-5000
Facsimile: (650)251-5002

CHET A. KRONENBERG (222335)
ckronenberg@stblaw.com
SIMPSON THACHER & BARTLETT LLP
1999 Avenue of the Stars, 29th Floor
Los Angeles, California  90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502

*Attorneys for Defendants Velocity Financial, Inc.,
Christopher D. Farrar, Mark R. Szczepaniak,
Christopher J. Oltmann, Alan H. Mantel, Ian K.
Snow, John A. Pless, Brandon Kiss, Ogden Phipps,
Daniel J. Ballen, John P. Pitstick, Joy L. Schaefer,
Snow Phipps Group, LLC*

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EDWARD A. BERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VELOCITY FINANCIAL, INC., CHRISTOPHER D. FARRAR, MARK R. SZCZEPANIAK, CHRISTOPHER J. OLTMANN, ALAN H. MANTEL, IAN K. SNOW, JOHN A. PLESS, BRANDON KISS, OGDEN PHIPPS, DANIEL J. BALLEN, JOHN P. PITSTICK, JOY L. SCHAEFER, SNOW PHIPPS GROUP, LLC, WELLS FARGO SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., JMP SECURITIES, LLC and RAYMOND JAMES & ASSOCIATES, INC.,<br><br>Defendants. | Case No. 2:20-cv-06780 RGK (PLAx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:   Hon. R. Gary Klausner<br><br>Date:        December 21, 2020<br>Time:        9:00 a.m.<br>Courtroom:  850, 8th Floor |

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE than on December 21, 2020, at 9:00 a.m., or as soon thereafter as this motion may be heard in the Courtroom of the Honorable R. Gary Klausner, United States District Judge, Central District of California, located at 255 East Temple Street, Courtroom 850, Los Angeles, California 90012, Defendants Velocity Financial, Inc. ("Velocity"), Christopher D. Farrar, Mark R. Szczepaniak, Christopher J. Oltmann, Alan H. Mantel, Ian K. Snow, John A. Pless, Brandon Kiss, Ogden Phipps, Daniel J. Ballen, John P. Pitstick, and Joy L. Schaefer (the "Individual Defendants" and together with Velocity, the "Velocity Defendants"), Snow Phipps Group, LLC ("Snow Phipps"), Wells Fargo Securities, LLC, Citigroup Global Markets Inc., JMP Securities, LLC, and Raymond James & Associates, Inc. (the "Underwriter Defendants," and together with the Velocity Defendants and Snow Phipps, "Defendants") will and hereby do move the Court for an order dismissing with prejudice plaintiff's First Amended Complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's Section 11 claim should be dismissed because the Complaint fails to state a claim for violation of the Securities Act of 1933.  The Complaint does not identify any actionable statements that were false or misleading.  The Complaint does not plausibly plead that Defendants were aware of any material fact that was not disclosed or otherwise publicly known, and Velocity made all required disclosures under Items 303 and 105.  Plaintiff's Section 15 claim similarly fails because that claim is predicated on Plaintiff's deficient Section 11 claim, and Plaintiff also fails to plead facts showing the Individual Defendants or Velocity exercised a "significant degree of day to day operational control" over the other Defendants.

Defendants' counsel met and conferred with Plaintiff's counsel regarding this motion in accordance with Local Rule 7-3 on November 13, 2020.  The parties were unable to reach agreement to resolve this dispositive motion.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Stephen P. Blake ("Blake Decl.") and attached exhibits, all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this Motion.

Dated:  November 20, 2020

SIMPSON THACHER & BARTLETT LLP

By  */s/ Stephen Blake*
JAMES G. KREISSMAN (206740)
jkreissman@stblaw.com
STEPHEN P. BLAKE (260069)
sblake@stblaw.com
2475 Hanover Street
Palo Alto, CA  94304

CHET A. KRONENBERG (222335)
ckronenberg@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California  90067

*Attorneys for the Velocity Defendants and Snow Phipps*

DAVIS POLK & WARDWELL LLP

By  */s/ Neal Potischman*
Neal A. Potischman (SBN 254862)
neal.potischman@davispolk.com
1600 El Camino Real
Menlo Park, California 94025

CHARLES S. DUGGAN
charles.duggan@davispolk.com
DANA M. SESHENS
dana.seshens@davispolk.com
(*pro hac vices* pending)
450 Lexington Avenue
New York, New York 10017

DAVID G. HALM (SBN 179957)
David.Halm@qpwblaw.com
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
500 N. Brand Blvd., Suite 1650
Glendale, California 91203

*Attorneys for the Underwriter Defendants*

# MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

NOTICE OF MOTION & MOTION ........................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES .............................................. i

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 3

ARGUMENT ...................................................................................................... 6

I.     THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM ............... 7

    A.     Velocity's Underwriting Practice Statements Were Not
       Misleading .......................................................................................... 7

    B.     Velocity Did Not Omit Information About Its Loan
       Delinquencies .................................................................................. 10

    C.     Velocity's Statements About Real Estate Investment Market
       Conditions Were Not Misleading ..................................................... 15

    D.     Velocity Made All Required Disclosures Under Items 303 and
       105 ................................................................................................... 18

II.    THE COMPLAINT FAILS TO STATE A SECTION 15 CLAIM ............. 19

III.   PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED
    WITH PREJUDICE ....................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................ 6

*Boca Raton Firefighters v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) .............................................. 10

*Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates*, Series AR1,  748 F. Supp. 2d 1246 (W.D. Wash. 2010) .............. 19

*Brothers v. Hewlett-Packard*,
  No. 06-cv-02254, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ...................... 16

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183(9th Cir. 1987) .................................................... 20

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ..................................................... 9

*Glassman v. Computervision Corp.*,
  90 F.3d 617 (1st Cir. 1996) ..................................................... 12

*Gompper v. VISX*,
  298 F.3d 893 (9th Cir. 2002) .................................................... 20

*Greenberg v. Sunrun*,
  No. 16-cv-2480, 2017 WL 528413 (N.D. Cal. Feb. 9, 2017) ........................ 16

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*,
  270 F. App'x 570 (9th Cir. 2008) ............................................... 6

*In re Atossa Genetics, Inc. Sec. Litig.*,
  No. C13-1836 RSM, 2014 WL 4983551 (W.D. Wash. Oct. 6, 2014) ........... 11

*In re Bare Escentuals, Inc. Sec. Litig.*,
  745 F. Supp. 2d 1052 (N.D. Cal. 2010) ......................................... 19

*In re Deutsche Bank AG Secs. Litig.*,
  No. 09-cv-1714, 2016 WL 4083429 (S.D.N.Y. July 25, 2016) ....................... 16

*In re Focus Media Holding Ltd. Litig.*,
  701 F. Supp. 2d 534 (S.D.N.Y. 2010) ........................................... 12

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) .............................................. 13, 17

*In re Infonet Servs. Corp. Sec. Litig.*,
  310 F. Supp. 2d 1080 (C.D. Cal. 2003) .......................................... 17

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ............................................... 7, 12

*In re: Resonant Inc. Sec. Litig.*,
   No. 15-cv-1501970, 2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) ..................... 7

*Johnson v. NYFIX, Inc.*,
   399 F. Supp. 2d 105 (D. Conn. 2005) ............................................................. 11

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................................ 7

*Lilley v. Charren*,
   17 F. App'x 603 (9th Cir. 2001) ....................................................................... 9

*Lloyd v. CVB Fin. Corp.*,
   No. CV 10-06256, 2012 WL 12883517 (C.D. Cal. Aug. 21, 2012) .................... 9

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
   No. 07-cv-5756, 2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) ........................ 9

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ........................................................................... 17

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) .............................................................................. 10, 18

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................ 16

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) .......................................................... 19

*Quinones v. MetLife Home Loans, N.A.*,
   2012 WL 12896373 (C.D. Cal. Dec. 13, 2012) ................................................. 6

*Rubke v. Capital Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) .............................................................. 7, 12, 17

*Schoenhaut v. Am. Sensors, Inc.*,
   986 F. Supp. 785 (S.D.N.Y. 1997) ................................................................. 13

*Silverstrand Invs. v. AMAG Pharm., Inc.*,
   707 F.3d 95 (1st Cir. 2013) ............................................................................ 19

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ........................................................................ 18

**Statutes**

15 U.S.C. § 77k ........................................................................................... 7, 11

15 U.S.C. § 77o ............................................................................................... 20

17 C.F.R. § 229.105 ......................................................................................... 19

17 C.F.R. § 229.303 ......................................................................................... 19

Fed. R. Civ. P. 12 ................................................................................................ 6

Fed. R. Civ. P. 8 .................................................................................................. 7

### INTRODUCTION

Velocity provides financing to owners of small commercial and residential rental properties.  It conducted its IPO on January 17, 2020.  Its shares traded at or above its IPO price throughout January and February.  However, in March 2020, as the COVID-19 global pandemic disrupted financial and real estate markets and sent the global economy into a tailspin, Velocity's share price declined precipitously, along with all major stock market indices.  While failure to predict an unprecedented global pandemic and its fallout cannot form the basis for a securities claim, Plaintiff nevertheless seeks to make it the principal focus of his Complaint.

Plaintiff asserts claims against Defendants for violations of the Securities Act of 1933, alleging that Velocity's IPO offering materials failed to inform investors (i) of an "undisclosed relaxation of Velocity's underwriting practices"; (ii) that "non-performing loans had dramatically increased in size" at the time of the IPO; and (iii) of the "potential impact of [the] brewing [COVID-19] pandemic on Velocity's business."  Each of these claims fails for multiple reasons.

**Purported Relaxation of Underwriting Practices**:  In its IPO disclosures, Velocity provided a detailed description of its business, including its underwriting practices.  Plaintiff claims that these statements were misleading because—according to Plaintiff—Velocity's growth was fueled by undisclosed short-term loans allegedly originated under relaxed underwriting standards.  Not so.  ***First***, Plaintiff cannot state a claim because Velocity's origination of short-term loans and their associated underwriting standards and risks were disclosed in great detail—indeed in almost precisely the terms that Plaintiff claims were omitted.  ***Second***, this claim fails because the statements Plaintiff challenges are so fundamentally generic in nature as to constitute non-actionable puffery (*e.g.*, that the Company maintained "disciplined" loan underwriting practices).

**Purported Increase in Non-performing Loans**:  In its IPO disclosures, Velocity provided extensive information about the percentage of non-performing

loans in its portfolio, including estimates of the number of non-performing loans for the fourth quarter ending December 31, 2019, which had concluded six days before the final, effective Registration Statement was filed. Plaintiff does not challenge the accuracy of *any actual number* included in the effective Registration Statement (including Velocity's estimates for Q4 2019), which showed that Velocity's delinquency rate was slowly increasing over time. Yet, Plaintiff claims that Velocity somehow nevertheless failed to disclose the "real" clip at which its non-performing loan rate was increasing as of the time of the IPO. This claim fails because Plaintiff does not offer a single well-pleaded fact showing that, as of the January 17 IPO date, Velocity's non-performing loan rate had materially increased from the levels Velocity had disclosed. Instead, Plaintiff relies on Velocity's non-performing loan rate data from the quarter ending March 31, 2020 (which had just begun at the time of the IPO) and its results as of April 30, 2020 (*more than three months after* the IPO). Not only were these results from periods that post-date the IPO, but, as Plaintiff concedes, they were impacted by COVID-19 and the unprecedented global upheaval that it has left in its wake.

**Lack of Clairvoyance About the Impact of COVID-19**: Plaintiff also claims that Velocity's IPO disclosures were misleading because they described Velocity's business model in positive terms (*e.g.*, as a substantial and durable market opportunity), while failing to tell investors—on January 17, 2020—that its business was going to experience a material downturn due to the impact of COVID-19. *First*, as with the underwriting practices claim, this claim fails because the statements Plaintiff claims were rendered misleading are non-actionable puffery. *Second*, at the time of the IPO, it would not have been reasonable to issue a dire COVID-19 warning, given that there was not a single diagnosed case of COVID-19 in the U.S. and the World Health Organization ("WHO") had yet to declare a pandemic. Indeed, the U.S. only declared a COVID-19 emergency on March 13, nearly two months after the IPO. Plaintiff fails to plead—and offers no reason to

infer—that Defendants had specialized knowledge about COVID-19 that differentiated them from their public investors or allowed them to predict an impact that U.S. and world governments had yet to see.  Given that fact, Defendants had no duty (or ability) to disclose a specific COVID-19 risk at the time of the IPO.

What happened here is clear.  Velocity had a successful IPO and its business prospered.  Then, due to the COVID-19 pandemic, Velocity, like many companies, experienced economic challenges, and its stock price fell.  While Plaintiff claims that Velocity should have predicted the impact of COVID-19 on its business, the securities laws do not require clairvoyance, and Plaintiff cannot use them as an insurance policy for investment losses arising from an unprecedented global pandemic.  Accordingly, the Complaint should be dismissed with prejudice.

## **BACKGROUND**

**The Parties:** Velocity originates and manages loans secured by 1-4 unit residential rental and small commercial properties, securitizing and selling some loans, and holding others for investment purposes.  Compl. ¶ 4; Blake Decl. Ex. 1 ("S-1/A") at 9.[1]  The Individual Defendants are current or former directors of Velocity or its predecessor.  Compl. ¶¶ 12-23.  The Underwriter Defendants are financial institutions that underwrote Velocity's IPO.  *Id.* ¶ 25.  Snow Phipps is a long-term Velocity investor who beneficially owned 60% and 37% of Velocity's stock, respectively, before and after its IPO.  *Id.* ¶ 24; S-1/A at 158.

Plaintiff Edward Berg claims to own approximately 1,500 Velocity shares, or approximately 0.02% of the shares issued in Velocity's IPO.  Compl. ¶ 10; ECF 1.

**Velocity's IPO:**  Velocity conducted its IPO on January 17, 2020.  Compl. ¶¶ 34-35.  Its S-1/A Registration Statement was filed on January 6, 2020 and was declared effective on January 16, 2020.  *Id.* ¶ 34.  At that time, there were no

---

[1] All documents in the Blake Decl. are either explicitly incorporated by reference into the Complaint or are proper subjects of judicial notice.  *See* Defendants' attached Request for Judicial Notice.

diagnosed cases of COVID-19 in the U.S.[2]

Velocity's Registration Statement was highly detailed, including an extensive description of its business, audited financial statements and "key performance metrics" for the preceding 4.75 years. *See generally* S-1/A. Among its many disclosures, Velocity explained that its portfolio was broken out between "loans held for investment," which were typically long-term loans, and "loans held for sale," which consisted of "short-term, interest-only loans" that Velocity began originating in 2017. *See id.* at 16-18. Velocity disclosed that the amount of loans it held for sale through September 30, 2019 (~$170 million) had increased substantially from the end of 2018 (~$78 million). *See id.* at 24. Velocity also made detailed disclosures about loan delinquencies, including a breakdown of loans held for investment that were 30–59 and 60–89 days delinquent and non-performing as of September 30, 2019, as well as estimates of the share of total loans that would be reported as non-performing for the year ending December 31, 2019. *See id.* at 20, 71.[3]

The Registration Statement explained that Velocity's business was directly tied to the health of the economy, the financial markets and the real estate markets. Velocity warned investors: "we are dependent upon the success of the investor real estate market"; "difficult conditions in the real estate markets, the financial markets and the economy generally may adversely impact our business"; "negative trends in . . . real estate conditions may reduce demand for our products and services . . . includ[ing] . . . the inability of residents and tenants to pay rent"; and, after noting that its loan portfolio is mostly located in New York, California, Florida and New Jersey, "[d]eterioration of economic conditions or natural disasters in these or in any

---

[2]  The first laboratory-diagnosed case of COVID-19 in the U.S. was confirmed on January 20, and reported to CDC on January 22, 2020. Blake Decl. Ex. 2 at 400.

[3]  Velocity also explained that its sophisticated in-house team often resolved loan delinquencies profitably even after loans became non-performing, limiting losses from delinquency to "an average annual charge-off percentage since January 1, 2013 [of] approximately 0.02%" of loan originations. *Id.* at 72.

other state in which we have a significant concentration of borrowers could have a material and adverse effect on our business . . . ." *See* S-1/A at 20, 27, 36.  The Company also explicitly warned that "***acts of God***" could significantly impact "the ability of the property owner to generate net income from operating the property, which may result in the inability of such property owner to repay a loan, as well as the risk of foreclosure." *Id.* at 36.

**Subsequent Events**:  Velocity's stock traded at or above its IPO price in January and February.  However, beginning in March 2020, the rapid, unanticipated impact of COVID-19 triggered a widespread slowdown of the global economy.  On March 11, 2020, the WHO declared COVID-19 a "pandemic."  Blake Decl. Ex. 3. On March 13, President Trump declared a U.S. national emergency.  *Id.* Ex. 4. Around this time, Velocity's stock fell precipitously, along with the markets generally.  *Id.* Ex. 5.  Notably, Plaintiff does not allege that any Velocity disclosures triggered the Company's principal stock price decline.

On March 31, 2020, Velocity informed the market that it would need to delay its annual report "due to the current economic environment, including circumstances related to the novel coronavirus (COVID-19) global outbreak."  Compl. ¶ 60.  On April 6, 2020, Velocity announced that it had amended its warehouse lending agreements and received a $45 million investment from certain existing investors, including Snow Phipps.  Compl. ¶ 61; Blake Decl. Ex. 6.  The Company filed its annual report on April 7, 2020, highlighting the damage and future risks posed by "[t]he outbreak of the recent coronavirus," which "has caused and is likely to continue to cause quarantines, business shutdowns, . . . increased unemployment and commercial property vacancy rates, reduced ability [of] some property owners to make mortgage payments, and overall economic and financial market instability, all of which may result in a decrease in our business and cause our customers to be unable to make scheduled loan payments."  Blake Decl. Ex. 7 at 436-37.

On May 13, 2020, Velocity announced that it had "temporarily suspended

1  loan origination activities until markets stabilize." *Id.* Ex. 8 at 567.  Velocity also

2  disclosed that non-performing loans had increased to 9.9% as of April 30, 2020,

3  "mainly as [an] effect of COVID with the non-accruals going up." *Id.* Ex. 9 at 584.

4  **Plaintiff's Claims:**  The Complaint alleges that the Company's IPO

5  Registration Statement was materially false or misleading in three respects. *First*,

6  Plaintiff claims that "[t]he Company portrayed itself to investors as a disciplined

7  lender in the underserved niche market of small commercial properties and

8  residential rental units," Compl. ¶ 28, while failing to disclose a "relaxation of

9  Velocity's underwriting practices which fueled massive growth in the Company's

10  loan portfolio but filled it with risky loans more likely to become delinquent." *Id.* ¶

11  5; *see also id.* ¶¶ 37-38.  *Second*, Plaintiff claims that Velocity "failed to disclose the

12  substantial and growing proportion of the Company's loans that were non-

13  performing and/or on non-accrual status as of the IPO." *Id.* ¶ 8; *see also* ¶¶ 5-7, 39-

14  47.  *Finally*, Plaintiff claims that Velocity "depicted a halcyon real estate market" in

15  a materially misleading manner because the Company "fail[ed] to disclose

16  information concerning the onset of the coronavirus pandemic, or its actual and

17  potential implications for the Company." *Id.* ¶¶ 6-8; 48-52.

18  **ARGUMENT**

19  To survive a motion to dismiss under FRCP 12(b)(6), the Complaint must

20  "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

21  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  FRCP Rule 8

22  requires "factual content that allows the court to draw the reasonable inference that

23  the defendant is liable," *id.*, not just "a sheer possibility that [Defendants have] acted

24  unlawfully." *Quinones v. MetLife Home Loans, N.A.*, 2012 WL 12896373, at *1

25  (C.D. Cal. Dec. 13, 2012) (quoting *Iqbal*, 556 U.S. at 678).  Conclusory allegations

26  without factual support are insufficient, *see Impac Warehouse Lending Grp. v.*

27  *Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008), as are

28  allegations "contradicting documents referenced in the complaint or that are

1    properly subject to judicial notice," *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580,

2    588 (9th Cir. 2008).  The Court must consider the S-1 Registration Statement as a

3    whole, not out-of-context snippets.  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405

4    n.4 (9th Cir. 1996) (on motion to dismiss, court properly "considered the full text of

5    the Prospectus, including portions which were not mentioned in the complaints").

## I.    THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM

7            To state a claim under Section 11, Plaintiff must allege that the Registration

8    Statement either (1) "contained an untrue statement of a material fact," (2) "omitted

9    to state a material fact required to be stated therein," or (3) "omitted to state a

10   material fact . . . necessary to make the statements therein not misleading."  15

11   U.S.C. § 77k(a); *see Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir.

12   2009) (Section 11 plaintiff must identify a material "omission or misrepresentation"

13   that "would have misled a reasonable investor about the nature of his or her

14   investment").  In other words, Plaintiff must allege that Defendants made either a

15   materially misleading statement or a material omission.

16           Moreover, such misrepresentation or omission must concern facts that existed

17   at the time of the IPO.  Judge Otero cogently explained that "a plaintiff must show

18   that a purported misstatement in a registration statement was misleading at the time

19   the registration statement was issued."  *In re: Resonant Inc. Sec. Litig.*, No. 15-cv-

20   1501970, 2016 WL 1737959, at *7 (C.D. Cal. Feb. 8, 2016).  Where "subsequent

21   developments make a statement in a public filing false or misleading, this does not

22   mean that a defendant committed a misrepresentation when [it] initially made the

23   public filing."  *Id.*  Thus, Plaintiff cannot just point to subsequent events and claim a

24   misrepresentation at the time of the IPO.  *See Rubke*, 551 F.3d at 1164.  Yet, that is

25   precisely what Plaintiff does in this suit, and is why his claim should be dismissed.

26       **A.    Velocity's Underwriting Practice Statements Were Not Misleading**

27           Plaintiff challenges Velocity's general statements that it had "'disciplined'

28   underwriting policies and practices, which . . . 'differentiated' [Velocity]."  Compl.

¶ 37.  Plaintiff argues that these statements were false and misleading because "Velocity's underwriting process was deficient" and it was "allowing riskier loans than the Company had historically issued to be made." *Id.* ¶ 38.  In particular, Plaintiff points to the rapid growth of Velocity's short-term loan portfolio in the period preceding the IPO.  *Id.* ¶ 47.  This claim fails for two reasons.

***First***, Velocity explicitly disclosed the growth of its short-term loan portfolio and its associated risk in the Registration Statement.  Plaintiff claims that in its April 8, 2020 press release announcing its Q4 2019 results, Velocity revealed, for the first time both that its short-term loan portfolio had grown by 103% on a year-over-year basis and that "[t]hese [short-term] loans typically serve as an interim solution for borrowers and/or properties that do not meet the investment criteria of [Velocity's] primary 30-year product." *Id*.  Plaintiff claims that those disclosures thus "newly" informed investors that Velocity's underwriting standards had been relaxed and that investors faced greater risk.  *Id.*  To the contrary, Velocity's IPO disclosures provide investors with nearly identical information.  Velocity's Registration Statement disclosed that it "began originating short-term, interest-only loans [in 2017]."  S-1/A at 34.  Velocity then detailed its short-term loan balances as of Q3 2019 and FY 2018, which showed that the Company's short-term loan balance had grown by *117%* during the first nine months of 2019.  *Id.* at 24.  Moreover, Velocity explained in its Registration Statement that "[t]his product typically serves as an interim solution for borrowers and/or properties that do not meet the investment criteria of our primary 30-year product," then warned that these loans "involve a greater risk of loss." *Id.* at 34.  In other words, the April 8, 2020 disclosure relied on by Plaintiff disclosed no new, material information.[4]  A misrepresentation claim cannot be

---

[4]  Plaintiff also claims Velocity failed to disclose that the FICO scores were lower for its short-term loans than for its long-term loans. Compl. ¶ 47.  Yet, the Registration Statement explicitly disclosed that its short term loans had a weighted average FICO score of 657, compared to a FICO score of 706 for its long-term loans.  S-1/A at 110.

premised on information that was, in fact, disclosed. *See, e.g.*, *Lilley v. Charren*, 17 F. App'x 603, 608 (9th Cir. 2001) (affirming dismissal where "virtually everything plaintiffs have identified as an omission was in fact disclosed"). Because Velocity disclosed both the growth and higher risk profile of short-term loans, Plaintiff's claim should be dismissed.[5]

**Second**, Plaintiff's challenged disclosures concerning Velocity's "disciplined," "differentiated" underwriting practices; "[c]ustomized [t]echnology"; and "proprietary" data (Compl. ¶¶ 28, 37) are not actionable as a matter of law. Courts have repeatedly dismissed similar statements as inactionable under the securities laws. *See, e.g.*, *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (statements about "highly disciplined" risk-management processes, a strong reputation for "integrity," and a "focus on financial discipline" were "merely generalizations regarding [the firm's] business practices" and therefore "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable"); *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, No. 07-cv-5756, 2009 WL 3112574, at *15 (C.D. Cal. Sept. 25, 2009) ("vague" and "broad" statement that company has "pretty good reputation as a good, sound originator" not actionable); *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256, 2012 WL 12883517, at *16 (C.D. Cal. Aug. 21, 2012) ("[G]eneral statements comparing [company's] credit culture and loan quality favorably to those of peer institutions were mere puffery and [not] actionable representations.").[6]

---

[5] Plaintiff also suggests that Velocity's disclosures were misleading because its "percentage of loans that are non-performing normally runs higher than that of other lenders." Compl. ¶ 38. Plaintiff offers no support for this conclusory assertion. Moreover, Velocity explicitly disclosed that its "underwriting guidelines are more narrow than some other mortgage lenders because we give primary consideration to the adequacy of the property as collateral and source of repayment for the loan rather than focusing on the personal income of the borrower" and explained that this "may result in higher delinquency and default rates than those experienced by mortgage lenders with broader underwriting guidelines." S-1/A at 31.

[6] Moreover, several of these statements are statements of opinion—reflecting Velocity's beliefs about its business—which are only actionable where a plaintiff

### B.     Velocity Did Not Omit Information About Its Loan Delinquencies

Plaintiff next contends that Velocity "emphasized the growth of the Company's loan portfolio [and a] consistent increase in . . . portfolio yield," Compl. ¶ 39, while, according to Plaintiff, failing to disclose a "substantial and growing proportion of the Company's loans[] were non-performing . . . as of the IPO." Compl. ¶ 8; *see also* ¶¶ 5, 41.  This claim fails for multiple reasons.

***First***, Plaintiff does not challenge the accuracy of the Company's reported "key performance metrics" for the quarter ended September 30, 2019 and annually for 2016-2018, or the fact that the Company's estimates of its preliminary results for the quarter ended December 31, 2019 (the quarter immediately prior to the IPO, which ended six days prior to Velocity's effective S-1/A) proved to be accurate once that quarter's results were reported.  Instead, Plaintiff claims that Velocity's disclosures were misleading because they gave the impression that such positive results would continue into the future.  Compl. ¶¶ 39-41.  However, a company does not mislead investors by accurately reporting historical financial and operating data. *See, e.g.*, *Boca Raton Firefighters v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) (violation of federal securities law cannot be premised upon company's disclosure of accurate historical data, such as accurate reporting of corporate earnings, even if company did not acknowledge long-term unsustainability of its business model); *see also* S-1/A at 23, 60 ("The historical results presented below are not necessarily indicative of financial results to be achieved in future periods.").[7]

---

pleads facts showing that Defendants did not actually believe them at the time they were made.  *See, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015) ("[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong.") (citations omitted).  Because Plaintiff makes no attempt to plead Defendants' belief at the time of the IPO, it cannot state a claim.

[7]  Plaintiff also claims that the Registration Statement "underrepresented the percentage of non-performing loans in 2Q19."  Compl. ¶ 43.  This claim is based ***solely*** on a comparison of Velocity's report of non-performing loans in its October 18, 2019 pre-effective draft S-1 (5.96%) and its 10-Q for 2Q 2020 (6.41%). Because this information did not appear in the final, effective Form S-1, it cannot

**Second**, Plaintiff's claim that Velocity failed to disclose "increased delinquencies and defaults, with [an] upward trend in non-performing loans" fails. Compl. ¶ 58; *see also* ¶¶ 41-42.  The very facts that Plaintiff now contends show a trend of increasing non-performing loans—"the amount of unpaid principal balance and as a percentage of the Company's overall loan portfolio," Compl. ¶ 5—*were clearly disclosed* in the Registration Statement, S-1/A at 20, 24:

|  | Unpaid Principal Balance (UPB, in millions) | Non-Performing Loans / UPB |
|---|---|---|
| **2016** | $1,038.03 | 4.09% |
| **2017** | $1,295.57 | 5.78% |
| **2018** | $1,631.33 | 5.85% |
| **2019E** | $2,055.00 | 6.70% |

Plaintiff's own chart "Percent of Non-Performing Loans Presented In Registration Statements" (located at the top of page 17 of the Complaint) illustrates the trend. Compl. ¶ 41.  Velocity's disclosures clearly showed both that its unpaid principal balance ("UPB") had grown significantly in the years prior to its IPO and that its

---

form the basis for a Section 11 claim.  As a matter of law, claims can only be brought for false or misleading statements in a ***final*** Registration Statement.  *See* 15 U.S.C. § 77k (applying to registration statement that "became effective"); *In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-cv-1836, 2014 WL 4983551, at *7 n.2 (W.D. Wash. Oct. 6, 2014); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 110 n.3 (D. Conn. 2005).  Moreover, the information in the draft S-1 was neither false nor misleading.  In making his claim, Plaintiff ignores the fact that Velocity updated and broadened its definition of non-performing loans in Q2 2020 and consequentially adjusted its historical numbers for the sake of consistency.  The change Velocity made during Q2 2020 was to treat loans as non-performing if they *had been* 90+ days past due (and thus stopped accruing interest and became "non-accruing loans") and they continued to be delinquent and non-accruing, even if, through partial repayment, they were now less than 90 days past due.  *Compare* Blake Decl. Ex. 10 at 661 ("Loans that are 90 or more days past due, in bankruptcy, or in foreclosure *are not accruing interest and are considered nonperforming loans*.") *with id.* Ex. 11 at 871 ("Loans that are 90 or more days past due, in bankruptcy, in foreclosure, *or not accruing interest are considered nonperforming loans*.") (emphasis added). The impact of the revised definition is demonstrated by the fact that in its Q2 2020 10-Q, Velocity's disclosure for "current" held for investment loans remains the same as it was in the draft S-1, but it now recategorizes 7,456 loans that were first disclosed as 30-89 days past due as "Nonperforming/ nonaccrual: <90 days past due."  *Id.* Ex. 11 at 873.  Thus, the draft S-1 was not inconsistent with the 10-Q.

1    percentage of non-performing loans had increased over time as well.  Moreover, the

2    Company explicitly warned investors "[a] portion of our loan portfolio currently is,

3    and in the future may be, delinquent and subject to increased risks of credit loss"

4    and that "acts of God" could meaningfully impact delinquency rates.  S-1/A at 34,

5    36.  Just as Plaintiff cannot premise a securities claim on the disclosure of accurate

6    financials, it also cannot state a claim for the "omission" of information and risks

7    actually disclosed.  *See In re Stac*, 89 F.3d at 1405.

8         ***Finally***, lacking a basis to challenge Velocity's historical disclosures, Plaintiff

9    cannot manufacture a claim by arguing that Velocity "failed to disclose that at the

10   time of the IPO, the Company's non-performing loans had dramatically increased in

11   size from the figures provided in the [Registration Statement]."  Compl. ¶ 5. *See*

12   *also id.* ¶¶ 8, 42.  This contention fails for the simple reason that Plaintiff has not

13   plausibly alleged that there had been a "dramatic[] increase" in non-performing

14   loans as of the IPO date of January 17, 2020.  Instead, Plaintiff alleges only that

15   non-performing loan rates increased during and after the first quarter of 2020, ***which***

16   ***was barely two weeks old*** on January 17.  Plaintiff's claim that Velocity should have

17   disclosed that delinquencies for Q1 2020 would exceed prior quarters when the

18   quarter had just begun is quintessentially impermissible hindsight pleading.  *See*

19   *Rubke*, 551 F.3d at 1164 ("A claim under section 11 based on the omission of

20   information must demonstrate that the omitted information existed at the time the

21   registration statement became effective."); *see also Glassman v. Computervision*

22   *Corp.*, 90 F.3d 617, 632 (1st Cir. 1996) (holding no disclosure violation based on

23   "allegedly undisclosed information (here only seven weeks into the quarter—and

24   where mid-quarter results were not particularly predictive)"); *In re Focus Media*

25   *Holding Ltd. Litig.*, 701 F. Supp. 2d 534, 539–40 (S.D.N.Y. 2010) (noting that

26   because "[t]he disclosure structure set out by the SEC . . . recognizes how

27   unworkable and potentially misleading a system of instantaneous disclosure out [of]

28   the normal reporting periods would be," courts are "reluctant to impose liability

1    based upon a failure to disclose financial data for a fiscal quarter in progress"

2    (citations omitted)); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 791

3    (S.D.N.Y. 1997) ("[C]ourts have been reluctant to impose liability based upon a

4    failure to disclose financial data for a fiscal quarter in progress—let alone for the

5    first 26 days of a quarter."). The Ninth Circuit has explained that:

6        Securities fraud cases often involve some more or less catastrophic event

7        occurring between the time the complained-of statement was made and the

8        time a more sobering truth is revealed (precipitating a drop in stock price).

9        Such events might include, for example, a general decline in the stock market,

10       a decline in other markets affecting the company's product, a shift in consumer

11       demand, the appearance of a new competitor, or a major lawsuit. When such

12       an event has occurred, it is clearly insufficient for plaintiffs to say that the

13       later, sobering revelations make the earlier, cheerier statement a falsehood.

14   *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by*

15   *statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6

16   (9th Cir. 2001). Thus, rather than rely on hindsight, "a plaintiff must set forth . . . an

17   explanation as to why the disputed statement was untrue or misleading *when made*."

18   *Id.* at 1549. As the Ninth Circuit further explained, "[t]his can be done most directly

19   by pointing to inconsistent contemporaneous statements or information (such as

20   internal reports) which were made by or available to the defendants [at the time]."

21   *Id*. Plaintiff makes no attempt to point to contemporaneous statements or

22   information available to Velocity on January 17, 2020. Instead, he relies on

23   misleading charts (see page 18 of the Complaint) to suggest that Velocity's full 1Q

24   and (amazingly) *Q2* 2020 non-performing loan numbers reflect the state of affairs at

25   the time of the IPO. Of course, these results reflect the subsequent, massive impact

26   of COVID-19, which caused business shutdowns and the corresponding economic

27   impact *well after* the January 17 IPO date. However, this data fails to imply that

28   there was an undisclosed increase in delinquencies *as of the IPO date* of January 17.

"**Doubling**": Plaintiff repeatedly claims that "[a]t the time of the IPO, the unpaid principal amount of non-performing loans held on the Company's balance sheet had nearly doubled year over year." Compl. ¶ 7; *see also* ¶¶ 42, 64, 67. This comparison does not help to establish a misrepresentation at the time of the IPO because it is between the $94 million in non-performing loans reported for Q1 2019 and the $174 million reported for Q1 2020. Again, Plaintiff impermissibly relies on data from almost two and a half months after the IPO date. *See supra* at 12-14.

"**9.9%**": Plaintiff also points to the fact that a "proportion of non-performing loans . . . stood at a staggering *9.9%* . . . by the end of April 2020." Compl. ¶ 65. It is obvious that an increase in non-performing loans three full months after the IPO does not render statements made in the IPO Registration Statement misleading.

**Delinquencies <90 Past Due**: Plaintiff also contends that the Registration Statement "failed to disclose the true extent of loans held that were delinquent but fewer than 90 days past due," *id.* ¶ 45, suggesting that because Velocity experienced a higher level of non-performing loans in April and the end of March, 2020, it must have known that these higher rates were going to occur as of the time of its IPO.[8] There are multiple flaws with this theory. First, Velocity *did* disclose the percentage of loans that were less than 90 days delinquent for Q3 2019 and prior years in the Registration Statement (S-1/A at 71) and for subsequent quarters (Plaintiff's source for the data in its chart). Second, Plaintiff nowhere explains or substantiates its suggestion that Velocity should have simply assumed as of the IPO that its <90 day delinquent loans would became >90 day Nonperforming Loans. To the contrary, simple common sense suggests that the business closures, spike in unemployment

---

[8] Plaintiff's suggestion that the growth in <90 day deficiencies was "fueled by deficiencies in the Company's underwriting practices and procedures that existed at the time of the IPO," Compl. ¶ 46, an apparent reference to its claim that lower quality short-term loans were leading to greater delinquencies, is patently incorrect. The <90 data upon which Plaintiff relies is *exclusively* related to Velocity's long-term held for investment portfolio, not its short-term term held for sale portfolio. *See* Compl. ¶ 45. Accordingly, it has no relationship to Plaintiff's short term loan-based underwriting practices claim.

and global recession caused by the intervening COVID-19 pandemic had a material impact on the rate at which <90 day delinquent loans became Nonperforming Loans.

Plaintiff lastly suggests that "management also confirmed [on the May 13, 2020 earnings call] that these adverse results were known and expected as of the IPO, which they characterized as largely due to ordinary portfolio 'seasoning' above and beyond any effects of the COVID-19 pandemic." Compl. ¶ 65.  To the contrary, on the May 13 call, the Company repeatedly stated that the increase in Nonperforming Loans to 9.9% through April 30 was "mainly [an] effect of COVID with the non-accruals going up" and that COVID-19 had also caused some portion of the 1.29% increase in non-performing loans as of March 31.  Blake Decl. Ex. 9 at 584.  Indeed, the Company *never* claimed that either increase in delinquency rates occurred principally because of seasoning.  It said the following:

> Over the next few quarters, we expect delinquencies will increase and we saw that happen in this quarter as well.  Some of that increase was the result of normal seasoning, as well as the impacts of the COVID-19 pandemic.

*Id.* at 580.  In sum, Plaintiff offers no basis to claim that Velocity's spike in loan delinquencies was expected as of the IPO date or was principally the result of anything other than the extraordinary circumstances precipitated after the IPO by the COVID-19 global pandemic.  Plaintiff's effort to base his claim on post-IPO events is clearly improper fraud-by-hindsight pleading.

### C.    Velocity's Statements About Real Estate Investment Market Conditions Were Not Misleading

Plaintiff targets statements that he claims "misleading[ly] describe[d] a robust market and strong demand for real estate investor loans when those conditions were evidently not realistic given the evolving nature of developments and circumstances arising from the fast-spreading coronavirus."  Compl. ¶ 51; *see also* ¶¶ 48-52.

***First***, Plaintiff again targets statements that are not actionable misrepresentations as a matter of law: Velocity "operate[s] in a large and highly

fragmented market with substantial demand"; "has developed the highly-specialized skill set required to effectively compete"; has "a durable business model" and an "institutionalized approach . . . underpins our long-term business strategy."  Compl. ¶¶ 48, 49.  These statements are again non-actionable corporate puffery.[9]  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("[M]ere corporate puffery, 'vague statements of optimism like "good," "well-regarded," or other feel good monikers,' are not actionable because '[investors] know how to devalue the optimism of corporate executives.'"); *Greenberg v. Sunrun*, No. 16-cv-2480, 2017 WL 528413, at *3, *7 (N.D. Cal. Feb. 9, 2017) (stating that "securities laws do not exist to combat sales puffery," such as company's "boasting about 'long term savings' and 'predictable pricing,'" which were simply a "core sales pitch"); *Brothers v. Hewlett-Packard*, No. 06-cv-02254, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006) (allegations that HP "touted" its "high-performance" products' "sophisticated design" were "non-actionable puffery in that they are nothing more than subjective statements of the superiority of the product, and are not objectively verifiable"); *In re Deutsche Bank AG Secs. Litig.*, No. 09-cv-1714, 2016 WL 4083429, at *28 (S.D.N.Y. July 25, 2016) (allegations of "publicly characterizing the Company's risk controls as . . . 'highly sophisticated' and 'industry leading'" were "inactionable puffery").[10]

---

[9]  Moreover, those statements expressing Velocity's beliefs about its market opportunities are non-actionable opinion statements.  *See* n.6, *supra*.  Plaintiff has not pleaded that Velocity did not believe these statements when they were made—indeed, Velocity continues to believe that these opportunities exist post-pandemic.  *See* Blake Decl. Ex. 7 at 428.

[10]  Plaintiff also contends that the Registration Statement "relied in substantial part on outdated information in describing the condition of the residential and commercial real estate markets and industry demand" by citing market studies with "data available as of September 2019."  Compl. ¶ 50.  As an initial matter, Velocity's disclosure made clear that the market data it provided was "***based on the most recent data available*** as of September 2019."  S-1/A at 8 (emphasis added).  No reasonable investor would be misled to believe this information was current as of the January 17, 2020 IPO.  Moreover, Plaintiff identifies no authority suggesting more current data was required to be provided in the Registration Statement.

***Second***, Plaintiff has not plausibly pleaded that these statements were misleading *at the time that they were made*.  *See supra* at 12-14 (citing *Rubke*, 551 F.3d at 1164 and *In re GlenFed*, 42 F.3d at 1548).  Instead, Plaintiff relies on the incredible assertion that "defendants failed to disclose the potential impact of a brewing pandemic on Velocity's business and operations, despite the fact that the international spread of the virus had already been confirmed at the time of the IPO." Compl. ¶ 6; *see also* ¶¶ 51-52.  However, on January 17, 2020, there was not a single confirmed case of COVID-19 in the U.S.; contemporaneous accounts of "international spread" consisted of reporting three cases outside of China; and the Director of the U.S. CDC's National Center for Immunization and Respiratory Diseases expressed that "current risk from the virus to the general public is low." Blake Decl. Ex. 12 at 894.  The securities laws do not require companies to predict the future.  *See e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (holding "allegations that defendants should have anticipated future events and made certain disclosures earlier . . . do not suffice to make out a claim for securities fraud" because "[c]orporate officials need not be clairvoyant" and "are only responsible for revealing those material facts reasonably available to them").  Velocity was not required to predict the spread of the coronavirus to the U.S. and its ultimate impact.

***Third***, the securities laws do not require disclosure of publicly known information.  *See Rubke*, 551 F.3d at 1162-63 (holding that "Section 11 does not require" disclosure of "publicly available" information); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1097 n.14 (C.D. Cal. 2003) (Defendants should not be held liable for omitting information regarding agreements whose details were available to the public and which were likely not firm specific).  Because Plaintiff has not alleged any information available to Velocity about the "spread of the virus" that was not publicly known, it cannot plead a Section 11 violation.

***Finally***, Velocity warned investors that its business was highly dependent on the "real estate markets, the financial markets and the economy generally" and that

it was specifically vulnerable to "[d]eterioration of economic conditions or natural disasters" in "New York, California, Florida and New Jersey."  S-1/A at 20, 36.  The Company likewise cogently warned that adverse events including "acts of God" could have significant effects on its business by impacting "borrower's ability to repay the loan" and "the risk of foreclosure."  S-1/A at 36.  These are not "generic warnings" as Plaintiff seems to contend, Compl. ¶ 6, but rather specific cautions of the impact on the Company that an unanticipated event like COVID-19 would entail.  Such disclosures put investors on notice that Velocity's business could suffer significant negative consequences in the event of a major event such as a global pandemic.  *See, e.g., In re Stac*, 89 F.3d at 1409 ("[I]nvestors were specifically and adequately cautioned about the relevant risks."); *see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.W. 175, 190-91 (2015) ("reasonable investor" must read a statement, not "in a vacuum," but "in a broader frame" and "in its full context" in determining if there is an "omission of material facts that cannot be squared with such a fair reading").

### D.     Velocity Made All Required Disclosures Under Items 303 and 105

Unable to identify misleading statements in the Registration Statement, Plaintiff invokes Items 303 and 105 of SEC Regulation S-K in a vain effort to impose an affirmative duty to disclose the additional detail it would like to have seen included.  Compl. ¶ 53.  Item 303 requires that the issuer's Form 10-K "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).  Plaintiff must plead "knowledge of an adverse trend . . . and material impact . . . , but also that the future material impacts are *reasonably likely to occur* from the present-day perspective."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (emphasis in original).  In other words, Plaintiff cannot plead a violation of Item 303 by hindsight.  As discussed above, Plaintiff makes no effort to plead any

1    material "trend" or other information known by Velocity as of the IPO but not

2    disclosed in the Registration Statement.  He thus cannot state an Item 303 claim.

3         Plaintiff similarly cannot state a claim based on Item 105, which requires "a

4    discussion of the material factors that make an investment in the registrant or

5    offering speculative or risky."  17 C.F.R. § 229.105.  Velocity fully disclosed the

6    prospective impact of a widespread real estate market dislocation and that such

7    events could have a material impact on its financial position.  It was not required to

8    do more and predict that COVID-19 would trigger these circumstances in the

9    precise manner that ultimately occurred.  *See Silverstrand Invs. v. AMAG Pharm.,*

10   *Inc.*, 707 F.3d 95, 103 (1st Cir. 2013) ("[T]o withstand dismissal at the pleading

11   stage, a complaint alleging omissions of Item 503 risks needs to allege . . . the

12   offering documents failed to disclose the risk factor.").[11]

13   ## II.    THE COMPLAINT FAILS TO STATE A SECTION 15 CLAIM

14        Plaintiff's Section 15 "control person" claim should be dismissed because

15   Plaintiff fails to plead an underlying Section 11 violation.  *See Primo v. Pac.*

16   *Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1131 (N.D. Cal. 2013).  Plaintiff

17   also fails to plead facts showing the Individual Defendants or Velocity exercised a

18   "significant degree of day to day operational control" over the other Defendants.  *In*

19   *re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010).[12]

20

21   [11]  Plaintiff claims that Velocity's risk factors relating to the potential for increased
     delinquencies and the risks related to growth were insufficient because they
22   characterized as risks certain events which Plaintiff claims had already occurred.
     Compl. ¶¶ 58-59.  In fact, as discussed above, Velocity fully disclosed its key
23   performance metrics related to these risks, undercutting any such claim by Plaintiff.

24   [12]  Allegations concerning an individual's status as a director do not give rise to a
     sufficiently plausible inference of control to support a Section 15 claim.  *See, e.g.*,
25   *Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates*,
     Series AR1, 748 F. Supp. 2d 1246, 1257 (W.D. Wash. 2010) (dismissing Section 15
26   claim where "Plaintiffs simply allege the Individual Defendants were either officers
     or directors of WMAAC and that they signed the Registration Statements").
27   Moreover, Plaintiff has made no attempt to allege how board-*nominees* Pitstick and
     Schaefer would have been able to exercise the requisite control over Velocity.
28   Finally, Plaintiff also fails to state a Section 15 claim based on Velocity's alleged
     "control" over the Individual Defendants, Compl. ¶ 85, because the Complaint does

## III.   PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Leave to amend should be denied where "it would [be] a futile exercise." *Gompper v. VISX*, 298 F.3d 893, 898 (9th Cir. 2002); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (discretion to deny leave to amend "is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint'"). Plaintiff has already amended once rather than face a motion to dismiss his initial complaint. Plaintiff's Amended Complaint also fails to state a claim. Having filed two deficient complaints, Plaintiff should not be permitted a third.

Dated:  November 20, 2020

SIMPSON THACHER & BARTLETT LLP

By  */s/ Stephen Blake*
JAMES G. KREISSMAN (206740)
jkreissman@stblaw.com
STEPHEN P. BLAKE (260069)
sblake@stblaw.com
2475 Hanover Street
Palo Alto, CA  94304

CHET A. KRONENBERG (222335)
ckronenberg@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California  90067

*Attorneys for the Velocity Defendants and Snow Phipps*

DAVIS POLK & WARDWELL LLP

By  */s/ Neal Potischman*
Neal A. Potischman (SBN 254862)
neal.potischman@davispolk.com
1600 El Camino Real
Menlo Park, California 94025

CHARLES S. DUGGAN
charles.duggan@davispolk.com
DANA M. SESHENS
dana.seshens@davispolk.com
(*pro hac vices* pending)
450 Lexington Avenue
New York, New York 10017

DAVID G. HALM (SBN 179957)
David.Halm@qpwblaw.com
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
500 N. Brand Blvd., Suite 1650
Glendale, California 91203

*Attorneys for the Underwriter Defendants*

---

not allege any facts that Velocity controlled any of the individuals "through stock ownership, agency, or otherwise," as required for such a claim. 15 U.S.C. § 77o(a).

1  **ECF Certification**

2        Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories

3  listed, and on whose behalf the filing is submitted, concur in the filing's content

4  and have authorized the filing.

5  Dated:  November 20, 2020       SIMPSON THACHER & BARTLETT LLP

6                             By     */s/ Stephen Blake*

7                                Stephen P. Blake (SBN 260069)
                              sblake@stblaw.com

8                                2475 Hanover Street
                              Palo Alto, CA  94304

9                                Telephone: (650) 251-5153
                              Facsimile: (650) 251-5002

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28