1  JAMES G. KREISSMAN (SBN 206740)
   jkreissman@stblaw.com
2  STEPHEN P. BLAKE (SBN 260069)
   sblake@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, California  94304
   Telephone: (650) 251-5000
5  Facsimile: (650)251-5002

6  CHET A. KRONENBERG (SBN 222335)
   ckronenberg@stblaw.com
7  SIMPSON THACHER & BARTLETT LLP
   1999 Avenue of the Stars, 29th Floor
8  Los Angeles, California  90067
   Telephone: (310) 407-7500
9  Facsimile: (310) 407-7502

10 *Attorneys for Defendants Velocity Financial, Inc.,*
   *Christopher D. Farrar, Mark R. Szczepaniak,*
11 *Christopher J. Oltmann, Alan H. Mantel, Ian K.*
   *Snow, John A. Pless, Brandon Kiss, Ogden Phipps,*
12 *Daniel J. Ballen, John P. Pitstick, Joy L. Schaefer,*
   *Snow Phipps Group, LLC*

13 *[Additional counsel listed on signature page]*

14
                    **UNITED STATES DISTRICT COURT**
15           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                         **WESTERN DIVISION**
16

17 EDWARD A. BERG, Individually and on        Case No. 2:20-cv-06780 RGK (PLAx)
   Behalf of All Others Similarly Situated,
18                                            **DEFENDANTS' REPLY**
                  Plaintiff,                  **MEMORANDUM OF POINTS**
19                                            **AND AUTHORITIES IN**
            v.                                **FURTHER SUPPORT OF THEIR**
20                                            **MOTION TO DISMISS THE**
   VELOCITY FINANCIAL, INC.,                  **FIRST AMENDED COMPLAINT**
21 CHRISTOPHER D. FARRAR, MARK R.             **FOR VIOLATION OF THE**
   SZCZEPANIAK, CHRISTOPHER J.                **SECURITIES ACT OF 1933**
22 OLTMANN, ALAN H. MANTEL, IAN K.
   SNOW, JOHN A. PLESS, BRANDON               Judge:   Hon. R. Gary Klausner
23 KISS, OGDEN PHIPPS, DANIEL J.
   BALLEN, JOHN P. PITSTICK, JOY L.
24 SCHAEFER, SNOW PHIPPS GROUP,               Date:    December 21, 2020
   LLC, WELLS FARGO SECURITIES,               Time:    9:00 a.m.
25 LLC, CITIGROUP GLOBAL MARKETS              Courtroom: 850, 8th Floor
   INC., JMP SECURITIES, LLC and
26 RAYMOND JAMES & ASSOCIATES,
   INC.,
27               Defendants.

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................i

TABLE OF AUTHORITIES..........................................ii

INTRODUCTION ...............................................1

ARGUMENT .................................................1

I.     THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM ...............1

       A.     Velocity's Underwriting Practice Statements Were Not
              Misleading............................................1

       B.     Velocity Did Not Omit Information About Its Loan
              Delinquencies.........................................4

       C.     Velocity Did Not Misrepresent Real Estate Market Conditions ..........8

       D.     Velocity Made All Required Disclosures Under Items 303 and
              105 ...............................................10

II.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .......10

# TABLE OF AUTHORITIES

## CASES

*Azar v. Yelp, Inc.*,
  2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ........................................................ 9

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ............................................................................ 4

*Carbajal v. HSBC Bank USA, N.A.*,
  No. 16-cv-9297, 2017 WL 7806586 (C.D. Cal. May 16, 2017) ........................... 5

*In re Convergent Tech. Sec. Litig.*,
  948 F.2d 507 (9th Cir. 1991) ............................................................................... 5

*In re Dropbox Sec. Litig.*,
  No. 19-cv-06348, 2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ........................ 5

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
  135 F. Supp. 3d 145 (S.D.N.Y. 2015) .................................................................. 6

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ............................................................................................... 4

*Melot v. JAKKS Pac., Inc.*,
  No. 13-cv-05388, 2014 WL 12589334 (C.D. Cal. June 6, 2014) ........................ 5

*Murphy v. Precision Castparts Corp.*,
  No. 16-cv-00521, 2020 WL 4040827 (D. Or. July 17, 2020) ............................. 9

*In re Splash Tech Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................................... 9

*In re Synchrony Fin. Sec. Litig.*,
  450 F. Supp. 3d 127 (D. Conn. 2020) .................................................................. 4

## STATUTES AND REGULATIONS

17 C.F.R. § 229.105 ................................................................................................... 4

**INTRODUCTION**

Plaintiff's opposition fails to present a misstatement or omissions theory that can be reconciled with Velocity's Registration Statement and extensive public disclosures.  Moreover, Plaintiff's two basic narratives contradict each other.

The centerpiece of Plaintiff's complaint is that Velocity failed to warn investors of the "onset of the coronavirus pandemic."  Compl. ¶ 8.  Plaintiff presses this claim despite the fact that COVID-19's significance was not foreseeable at the time of Velocity's January 17, 2020 IPO.  This claim is utterly meritless.

As an evident fallback, Plaintiff's opposition now asserts that Velocity faced "rising delinquenc[ies]" because it had "open[ed] its loan coffers to risky borrowers" which "*ha[d] nothing to do with COVID*."  ECF No. 50 ("Opp.") at 5:6-13 (emphasis added).  This theory also fails.  Velocity accurately detailed its underwriting practices, its delinquency rates, its growing portfolio of short-term loans, and related risks.  Moreover, Plaintiff cannot point to *any* well-pleaded facts existing *at the time of the IPO* showing any (i) undisclosed trend of rising delinquencies, or (ii) "relaxation" of underwriting standards.  Velocity's business and borrowers were hit hard by the COVID-19 pandemic, and its stock price suffered.  An unanticipated *force majeure* does not give rise to a securities claim.

**ARGUMENT**

**I.     THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM**

**A.     Velocity's Underwriting Practice Statements Were Not Misleading**

Defendants' opening brief demonstrated that Plaintiff cannot claim that Velocity neglected to disclose underwriting risks associated with its growing portfolio of short-term loans because (i) Velocity disclosed—in nearly identical terms—the very information Plaintiff claims was omitted, and (ii) the statements that Plaintiff challenges are classic "puffery."  ECF 45 ("Mot.") at 7:26-9:21.  In response, Plaintiff argues that Velocity failed to disclose that it (a) had "relaxed" its underwriting standards "to allow for exponential growth in origination of short-

term" loans and (b) "expected the proportion of non-performing loans would increase as the newly-originated loans seasoned."  Opp. at 6:20-25.  Plaintiff cites no well-pleaded facts to support these conclusory assertions, and the plain language of Velocity's IPO disclosures shows that these assertions are false.[1]

**Increase of short-term loans**:  Velocity disclosed that it began originating short-term ("held for sale," or "HFS") loans in 2017, as well as their total amount for 2017-Q3 2019.  Blake Decl. Ex. 1 ("S-1/A") at 18, 24, 34, 107.  Investors could clearly see they were a small, yet growing portion of the portfolio (000s):

| Time Period | HFS Loans | HFS Growth | Total Loans ("TL") | TL Growth | HFS/ TL |
|---|---|---|---|---|---|
| **2016** | - | - | $1,046,679 | - | - |
| **2017** | $5,651 | 100% | $1,309,324 | 25% | 0.43% |
| **2018** | $78,446 | 1288% | $1,649,317 | 26% | 4.76% |
| **Q1-3 2019** | $170,440 | 117% | $1,949,311 | 18% | 8.74% |

*Id.* at 24.  Velocity also disclosed that its short-term borrowers had lower credit scores and HFS loans were relatively risker than its primary ("held for investment," or "HFI") loans.  *Id.* at 34; Mot. at 8:15-24, n.4.  In other words, Velocity disclosed both the meaningful growth of these loans through Q3 2019 and their greater risk.  Nevertheless, Plaintiff wrongly accuses Defendants of insufficient IPO disclosure by pointing to the virtually identical post-IPO description of these loans.  The practical equivalency of these disclosures defeats Plaintiff's claim.  *See* Mot. at 8:6-9:21.

**Underwriting standards**:  Plaintiff fails to allege facts showing that Velocity hid a pre-IPO "relaxation" of its underwriting standards.  To the contrary, Velocity explicitly disclosed its underwriting criteria for both its long-term and short-term products (*see* S-1/A at 106-115) and its disclosures show that these criteria were consistently applied through the time of the IPO (*see* S-1/A at 69).  As Velocity

---

[1]  Plaintiff also insists that Velocity failed to disclose that its "proportion of non-performing loans normally runs higher than [other] lender[s]."  Opp. at 6:25-26.  But Plaintiff cannot identify a single well-pleaded fact to support this bald assertion, and Velocity included risk factors explicitly warning of such differences.  Mot. at 9, n.5.

disclosed, its underwriting criteria primarily focus on Loan-to-Value ("LTV") ratios (which it identifies as the "key statistic" and the "[p]rimary [underwriting] consideration" given that Velocity "expect[s] the property to be the primary source of repayment for each loan"), as well as credit scores and personal guarantees. *See id.* at 17-18, 69, 109-111. Velocity disclosed that it "target[s] a weighted average LTV range for the portfolio at time of origination of 60% to 75%," which is applicable to both its long-term and short-term products. *Id.* at 17-18, 106-109. Velocity's S-1 and 2019 10-K show Velocity remained well within this target range:

| Loan-to-Value ("LTV") Ratio | | | | |
|---|---|---|---|---|
| **Loans** | **Q4 2019** | **Q3 2019** | **Q4 2018** | **Q4 2017** |
| *Held for Sale* | 68.4% | 68.1% | 65.1% | 69.7% |
| *Held for Investment* | 67.1% | 66.9% | 63.4% | 64.3% |

*Id.* at 69; Blake Decl. Ex. 7 ("10-K") at 474. Velocity also had Q3 2019 personal guarantees of 99.9% of HFI loans and 100% of HFS loans, with weighted average credit scores of 706 and 660. S-1/A at 17-18. It met nearly identical standards in Q4 2019. *See* 10-K at 431-33 (99.9%/100% guarantees; 706/651 FICO scores).[2]

Plaintiff now claims these disclosures were "buried," "piecemeal," and found only in a "28-page financial chart that contains a single-line item" and risk warnings 27 pages earlier. Opp. at 7:1-21, 8:9-9:10. In fact, Velocity's short-term HFS loans are discussed ***125 times*** and Velocity dedicated entire sections of the Registration Statement to these loan products. *See* S-1/A at 18-19; 73-74; 107-108.

Plaintiff also claims that Velocity's risk disclosures were inadequate because they described risks as "hypothetical" when they were "already realized." Opp. at 7:22-8:8. This claim fails both because Velocity warned investors that its short-term loans "**will** involve a greater degree of risk," S-1/A at 34 (emphasis added), and because it is not supported by well-pleaded facts. Velocity clearly disclosed or

---

[2] Plaintiff also cannot contend that the 103% year-over-year increase in Velocity's short-term loan portfolio through Q4 2019 was fueled by an undisclosed "decline" in its underwriting standards. Velocity fully disclosed both an even larger *117%* increase in this portfolio through Q3 2019 and the relativity greater risks associated with short-term borrowers. *See* Mot. at 8:14-19; Opp. at 13:8-14.

estimated its non-performing loan data (which included its HFS portfolio) for all periods through its IPO.  Mot. at 1:27-2:6, 4:10-14.  Tellingly, Plaintiff ignores this concededly accurate data, instead claiming that Velocity knew on January 17, 2020 that its non-performing loan percentage would increase in Q1 2020, although the quarter was only two weeks old.[3]  Plaintiff offers no sound basis for this assertion.

Finally, Plaintiff fails to distinguish Defendants' multiple citations finding virtually identical statements non-actionable "puffery", arguing that the statements are actionable because they "concern the crux of Velocity's business."  Mot. at 9:6-21; Opp. at 9:11-10:1 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).  *Matrixx* is inapposite; the Court stated the puffery doctrine "is not before us."  *Id.* at 33, n.2.  And numerous courts have rejected Plaintiff's very argument.  *See, e.g.*, *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) (statements were puffery due to "generic, indefinite nature," despite claim they were "directly related" to business); *In re Synchrony Fin. Sec. Litig.*, 450 F. Supp. 3d 127, 152 (D. Conn. 2020) (statements about "disciplined" underwriting were puffery, despite claim they were "central" to business).[4]

**B.     Velocity Did Not Omit Information About Its Loan Delinquencies**

Plaintiff claims Velocity hid that it was experiencing increasing loan delinquencies at the time of the IPO.  Defendants' opening brief established that, to the contrary, (i) Velocity accurately disclosed historical delinquency rates that had gradually increased over time; and (ii) Plaintiff relies entirely on hindsight to claim

---

[3]  Plaintiff also argues that "risk disclosures must be reported under a subheading that adequately describes the risk that follows." 17 C.F.R. § 229.105.  The second risk factor listed in Velocity's "Risks Related to Our Loan Portfolio" clearly states "Loans on properties in transition will involve a greater risk of loss than traditional investment-grade mortgage loans with fully insured borrowers." S-1/A at 34.

[4]  Defendants' opening brief also showed that a number of the allegedly misleading statements Plaintiff challenges reflect opinions and that Plaintiff is required to plead that those opinions were not sincerely held. Mot. at 9-10, n.6 &16, n.9.  Plaintiff argues that opinions can still be actionable if they mislead by omission.  Opp. at 10:2-18.  Nevertheless, Plaintiff is still required to plead facts showing that contrary information was known at the time of the IPO.  It has utterly failed to do so.

that Velocity knew in January 2020 that there would be a "dramatic[] increase" in delinquencies in Q1 and Q2 2020, particularly given the post-IPO impact of COVID-19.  Mot. at 10:1-15:20.  Plaintiff now concedes that Velocity's historical financial data was accurate as disclosed (Opp. at 10:22-11:3)[5] and that it showed a gradual increase in non-performing loans over time (Opp. at 12:18-22).  Plaintiff then offers convoluted and unmeritorious theories in an effort to salvage its claim.[6]

Plaintiff argues that Defendants created a "rosy picture" of Velocity's health by omitting information "available to them at the time of the IPO [about] the actual 4Q19 delinquency rates."  Opp. at 11:14-18.  However, Velocity estimated its total portfolio's non-performing loan rate for Q4 2019 to be "between 6.50% and 6.90% of total loans . . . compared to . . . 6.13% as of [Q3 2019], and of 5.85% as of [Q4 2018]."  S-1/A at 20.  That estimate proved correct: Velocity's audited Q4 2019 number fell within the estimate, at 6.88%.  10-K at 473.  Plaintiff now suggests that Velocity's Q4 2019 estimates—provided for key metrics in lieu of full audited numbers because the IPO took place within weeks of quarter end—were misleading

---

[5]  The Complaint repeatedly claimed that Velocity reported inaccurate Q2 2019 loan delinquency data in its Registration Statement.  Compl. ¶ 43.  Defendants' opening brief established both that the figures in question were accurate and that they were only included in a draft Registration Statement and thus were not actionable.  Mot. at 10-11, n.7.  Plaintiff offers no response to these two arguments and thus has abandoned these claims.  *See, e.g.*, *Carbajal v. HSBC Bank USA, N.A.*, No. 16-cv-9297, 2017 WL 7806586, at *6 (C.D. Cal. May 16, 2017) ("Plaintiff fails to address this issue in her opposition, thus effectively conceding the argument.").

[6]  Plaintiff questions Defendants' citation to a Second Circuit case for the proposition that "a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data."  Mot. at 10:14-21; Opp. at 11:8.  Ninth Circuit precedent for this point is legion.  *See, e.g.*, *In re Dropbox Sec. Litig.*, No. 19-cv-06348, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020) ("Courts . . . have repeatedly refused to find disclosure of accurate historical data misleading"); *Melot v. JAKKS Pac., Inc.*, No. 13-cv-05388, 2014 WL 12589334, at *10 (C.D. Cal. June 6, 2014) ("'[A]ccurate statements of past performance' are not actionable as a matter of law.").  Plaintiff then argues that the "Ninth Circuit has also held that even literally true statements may mislead, due to their context and manner of presentation."  Opp. at 11:9-13.  But that principle is inapplicable to the accurate reporting of historical data.  Indeed, both cases that Plaintiff cites rely on *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991), where the Ninth Circuit held disclosures which "simply report past performance" are not actionable.

because Velocity did not also include estimates of <90 day "delinquent but not yet non-performing loans" as it had for its audited Q3 numbers and would in subsequent quarterly reports.  Opp. at 13:16-19.  Plaintiff posits that this more granular data, specific to Velocity's HFI loans, shows an undisclosed "rising [delinquency] trend" which he claims were "poised to become non-performing."  Opp. at 12:10-13:23.  But the undisputed HFI delinquency numbers belie that position (000s):

| Loans Held for Investment | Q3 2019 | | Q4 2019 | |
|---|---|---|---|---|
| Current | $1,509,537 | 85.90% | $1,559,373 | 84.60% |
| **30-59 days past due** | **$110,484** | **6.30%** | **$123,704** | **6.70%** |
| **60-89 days past due** | **$34,729** | **2.00%** | **$48,062** | **2.60%** |
| Nonperforming loans: | | | | |
| 90+ days past due | $20,894 | 1.20% | $24,790 | 1.30% |
| Bankruptcy | $9,626 | 0.50% | $8,695 | 0.50% |
| In foreclosure | $71,441 | 4.10% | $78,666 | 4.30% |
| Total nonperforming loans | $101,961 | 5.80% | $112,151 | 6.10% |
| Total loans HFI | $1,756,711 | 100% | $1,843,290 | 100% |

*See* S-1/A at 71; 10-K at 475.  These data show absolute quarter-to-quarter increases of 0.40% and 0.60% for 30-59 and 60-89 day delinquencies, respectively, compared to Plaintiff's characterization of "increas[ing] 12%" and "***increasing by 30%***" on a relative basis.  Opp. at 13:19-23 (emphasis in original).  Plaintiff's effort to manipulate statistical data does not change the fact that the absolute change is clearly immaterial, as is the relative change in such a small component of Velocity's overall portfolio.  *C.f. In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 153 (S.D.N.Y. 2015) (declining to consider "relative rather than absolute percentage change").  Given that the final Registration Statement was filed on January 6, 2020—six days after the end of Q4 2019—Defendants had no obligation to disclose additional detail, particularly since its other recent disclosures had shown a similar slow increase in non-performing loans.  *See* Mot. at 11:1-13:5.[7]

---

[7]  Plaintiff argues that Defendants did not "describe the risk associated with the increasing delinquency buckets *in light of the increased number of riskier loans in the Company's portfolio*."  Opp. at 13:16-19.  The problem with this theory is that the data in question relates *exclusively* to Velocity's HFI loan portfolio, and does *not* reflect any changes to Velocity's short-term HFS loan portfolio.  *See* S-1/A at 71.

Unable to point to well-pleaded facts showing an undisclosed material increase in delinquencies in Q4 2019, Plaintiff argues that Velocity was aware of a "dramatic increase" in delinquencies at the time of the IPO, because it later reported increased delinquencies as of Q1 2020, April 2020 and Q2 2020.  This is pure hindsight pleading, and fails to show that Velocity had any contemporaneous information rendering its IPO disclosures inaccurate.  Plaintiff contends the post-IPO increases in delinquency rates somehow prove "that the undisclosed, pre-IPO relaxation of underwriting processes and the delinquency levels Defendants were aware about at the time of the IPO, should have been disclosed in the Offering Materials."  Opp. at 14, n.8.  This argument fails because, as discussed above, Plaintiff offers no well-pleaded facts showing that there was *ever* a "relaxation" of underwriting criteria or an undisclosed known increase in delinquencies.  Plaintiff provides no basis to infer that Defendants had any post-December 31, 2019 delinquency information *at the time of the IPO*.[8]  Courts generally recognize that such interim data cannot support a disclosure claim.  *See* Mot. at 12:8-13:5.  This Court should similarly reject Plaintiff's hindsight pleading.  *Id.*; Mot. at 15:16-20.[9]

Finally, Plaintiff claims he has adequately pleaded that a dramatic increase in delinquencies was "already happening at the time of the IPO" because "according to Velocity's CFO [the increase] was something that the Company 'expected.'"  Opp. at 14:1-9.  As discussed in Defendants' opening brief, this contention is meritless.  Velocity's CFO, in discussing the <2% increase in non-performing loans between Q4 2019 and Q1 2020, noted "some" portion of that increase was due to COVID-19

---

[8]  Indeed, as the above chart shows, Velocity considers loans "current" up to 30 days after their due date; the IPO was only 17 days into the month.  *See* S-1/A at 71, 224.

[9]  Plaintiff also attacks an argument that Defendants did not assert, Opp. at 14:19-15:25, claiming Defendants assert a negative causation defense because they point out that Velocity's stock price dropped in mid-March 2020, when broader markets fell sharply due to COVID-19 related news.  *See* Mot. at 5:7-14; Blake Decl. Exs. 3-5.  Defendants point to these facts not to raise a negative causation defense at this time, but to further highlight the fraud-by-hindsight nature of Plaintiff's arguments.

and some was due to expected "seasoning" (*i.e.*, rising delinquency rates as loans age). Mot. at 15:3-20. Plaintiff has no well-pleaded allegations showing any non-COVID related increase in Q1 2020 delinquencies would have been material or deviated from existing trends.[10] Further, Velocity later stated that the clear majority of its increased delinquencies were directly related to COVID-19. *See* Mot. at 15:6-10 (increase in nonperforming loans through April 30 was "mainly [an] effect of COVID"); Blake Decl. Ex. 11 at 873 ("The increase in total nonperforming loans as of June 30, 2020 was primarily attributed to the COVID-19 pandemic.").[11]

## C.   Velocity Did Not Misrepresent Real Estate Market Conditions

Defendants' opening brief refuted Plaintiff's claim that Velocity should have warned investors about the future impact of COVID-19. In particular, Defendants

---

[10] Velocity has profited from non-performing loans by managing its portfolio to resolve delinquencies before they result in foreclosures. S-1/A at 72. Pre-IPO resolutions had led to a net gain of $4.9 million, or 2.9% of loan balances, largely due to default interest and prepayment penalties. *Id.* Given this, Velocity had no reason to hide delinquencies, nor would minor delinquency rate changes be material.

[11] Plaintiff seeks to rely on a statement from Velocity's CFO, Mark Szczepaniak, during the May 13, 2020 earnings call, that "a 'chuck' [*sic*] of the increase [in delinquencies] were loans that underwriters decided 'ha[d] nothing to do with COVID.'" Opp. at 5:3-10. In April 2020, Velocity implemented a *voluntary* COVID forbearance program which let borrowers apply for temporary payment relief. The Company disclosed that as of May 13, it had approved 575 forbearance requests and rejected 98 others. In response to a question, Mr. Szczepaniak stated a "chunk" of the loans included in Velocity's 9.9% non-performing rate as of April 30, 2020 "could have" included "some of" the 98 loans that did not qualify for forbearance. Blake Decl. Ex. 9 at 588. As the Company explained, it is "not an automatic or mandatory forbearance, so we're actually underwriting every request, so we have the borrower fill out an application, explain their situation, [etc.]." *Id.* at 585. Mr. Szczepaniak's statement does not give rise to an inference about what Velocity expected its April 2020 delinquency rate to be at the time of the January 2020 IPO. It also does not state how many, if any, of the 98 rejected requests were included in the non-performing loan rate, or why such applications were rejected (*e.g.,* incomplete documentation). The possibility that some loans became non-performing for reasons other than COVID-19 does not change the fact that the main reason for the increased non-performing loan rate was COVID-19. Similarly, Plaintiff claims that because only $19.1 million in non-performing loans were granted forbearance as of June 30, 2020, the remaining non-performing loans must not have been COVID-related and thus should have been foreseeable as of the IPO. Opp. at 5:6-10. This assertion fails because, *inter alia*, the forbearance program was voluntary and, as explained above, Plaintiff fails to plead facts showing a change to underwriting standards or other developments that would allow Velocity to predict an increase in its non-performing loan rate in the quarters following its IPO.

explained that (i) the challenged statements are non-actionable puffery; (ii) Plaintiff has not alleged that Velocity could have foreseen the future impact of COVID-19 at the time of its IPO; and (iii) Velocity adequately warned investors about risks arising from both natural and economic disasters—and COVID-19 qualifies as both. Mot. at 15:21-18:15.  Plaintiff offers only a token response.  Opp. at 16:1-19:21.

Plaintiff claims the challenged statements about Velocity's ability to "generate attractive returns through various business cycles" and to "effectively compete" are not puffery because they "address specific aspects" that the Company knew "to be performing poorly."  Opp. at 16:23-17:2 (citing *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *12 (N.D. Cal. Nov. 27, 2018)).  In *Yelp*, Plaintiff claimed statements that "fundamentals" about a local advertising program "are in place and really strong," were misleading because Defendants knew the program was doing poorly.  *Id.*  Here, by contrast, the challenged statements relate to Velocity's whole business, not a specific program, and Plaintiff pleads no facts showing Defendants knew of a general downturn in Velocity's business at the time of the IPO.  *See supra* at 7-8.  Velocity's generic statements are thus classic puffery, routinely found non-actionable by multiple courts.  *See* Mot. at 16:4-19.[12]

Plaintiff also retreats from his claim that Defendants "failed to disclose the potential impact of a brewing pandemic" (Compl. ¶ 6)—he concedes that "Defendants were [not] required to predict the full extent of COVID's impact on its business," and argues only that "they were required to acknowledge the risks of a disease outbreak that had gained worldwide attention."  Opp. at 18:7-18.  Even this diluted claim fails.  Velocity clearly warned investors that "acts of God" could meaningfully impact delinquency rates, S-1/A at 36, and Plaintiff pleads no facts suggesting Defendants were (or could have been) aware of a material COVID-19

---

[12]  *See also, e.g.*, *Murphy v. Precision Castparts Corp.*, No. 16-cv-00521, 2020 WL 4040827, at *16 (D. Or. July 17, 2020) ("strong" growth and "good demand" are puffery); *In re Splash Tech Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1076-77 (N.D. Cal. 2001) ("strong demand" and "solid" position are puffery).

risk to Velocity's business on January 17, 2020—weeks before the first reported U.S. case and months before the declaration of a U.S. national emergency.  *See* Mot. at 5:9-11.  Plaintiff ignores this timeline, detailed in Defendants' brief, stating instead that the virus had "gained worldwide attention" as of the IPO.  Tellingly, even the WHO release Plaintiff cites contradicts his position: "[t]he evidence is highly suggestive that the outbreak is associated with exposures in one seafood market in Wuhan"; "there is no infection among healthcare workers"; and "no clear evidence of human to human transmission."  *See* Opp. at 18, n.13.  While COVID's impact is now clear, Plaintiff alleges no facts showing Velocity knew at its IPO that COVID would materially affect its business, or that a general warning of pandemics or COVID would have provided investors any meaningful information.[13]

###### D.     Velocity Made All Required Disclosures Under Items 303 and 105

Plaintiff wrongly claims Velocity failed to disclose "known risks" under SEC Regulation S-K.  Defendants disclosed all risks that were known at the time of the IPO, including delinquency risks.  *See* Mot. at 18:20-19:2; *supra* at 1-8.[14]

## II.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The amended complaint relies exclusively on hindsight, mischaracterizations and contradictory theories of liability and should be dismissed with prejudice.

---

[13]  Plaintiff wrongly argues that Defendants asserted a "truth-on-the-market" defense by arguing that the Complaint fails to allege that they had non-public information about the status of COVID-19 at the time of the IPO.  Opp. at 18:19-19:9.  Instead, Defendants raise this point simply to show that there are no allegations that they (or, for that matter, the investing public) anticipated that COVID-19 would take the course that it ultimately did.  The securities laws do not require clairvoyance.

[14]  Plaintiff also fails to state a Section 15 claim, both because he has not pleaded a primary Section 11 violation and because he fails to plead control of the Individual Defendants or Velocity.  *See* Mot. at 19:13-19.  Plaintiff offers little response.

Dated:  December 7, 2020

SIMPSON THACHER & BARTLETT LLP        DAVIS POLK & WARDWELL LLP

By  */s/ Stephen Blake*                                  By  */s/ Neal Potischman*
STEPHEN P. BLAKE (SBN 260069)          Neal A. Potischman (SBN 254862)
sblake@stblaw.com                                     neal.potischman@davispolk.com
2475 Hanover Street                                    1600 El Camino Real
Palo Alto, California 94304                          Menlo Park, California 94025

CHET A. KRONENBERG (SBN 222335)     CHARLES S. DUGGAN
ckronenberg@stblaw.com                           charles.duggan@davispolk.com
1999 Avenue of the Stars, 29th Floor         DANA M. SESHENS
Los Angeles, California  90067                     dana.seshens@davispolk.com
                                                                     (admitted *pro hac vice*)
                                                                     450 Lexington Avenue
                                                                     New York, New York 10017

                                                                     DAVID G. HALM (SBN 179957)
                                                                     David.Halm@qpwblaw.com
                                                                     QUINTAIROS, PRIETO, WOOD &
                                                                     BOYER, P.A.
                                                                     500 N. Brand Blvd., Suite 1650
                                                                     Glendale, California 91203

*Attorneys for the Velocity Defendants*          *Attorneys for the Underwriter*
*and Snow Phipps*                                          *Defendants*

1

## **ECF Certification**

2      Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories

3   listed, and on whose behalf the filing is submitted, concur in the filing's content

4   and have authorized the filing.

5   Dated:  December 7, 2020                    SIMPSON THACHER & BARTLETT LLP

6                                              By   */s/ Stephen Blake*

7                                                  Stephen P. Blake (SBN 260069)
                                                   sblake@stblaw.com

8                                                  2475 Hanover Street
                                                   Palo Alto, CA  94304

9                                                  Telephone: (650) 251-5153
                                                   Facsimile: (650) 251-5002

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28