JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendants' Motion to Dismiss First Amended Complaint [DE 45]

## I.  INTRODUCTION

On November 11, 2020, Edward Berg filed a first amended complaint ("FAC") against Velocity Financial, Inc., Christopher D. Farrar, Mark R. Szczepaniak, Christopher Oltmann, Alan Mantel, Ian Snow, John Pless, Brandon Kiss, Ogden Phipps, Daniel Ballen, John Pitstick, Joy Schaefer, Snow Phipps Group, LLC, Wells Fargo Securities, LLC, Citigroup Global Markets Inc., JMP Securities LLC, and Raymond James & Associates, Inc. (collectively, "Defendants"). The Complaint is a putative securities class action. It alleges violations of: (1) Section 11 of the Securities Act of 1933 against all Defendants; and (2) Section 15 of the Securities Act of 1933 against Velocity, the individual defendants, and Snow Phipps.

Now before the Court is Defendants' Motion to Dismiss. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II.  FACTUAL BACKGROUND

The FAC alleges the following:

Velocity is a real estate finance company that issues, manages, and securitizes loans to borrowers nationwide. The company focuses on loaning to small commercial and residential properties. The company's primary product is a 30-year amortizing loan with a three-year fixed rate to finance long-term real estate investments.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

In 2017, as a solution for borrowers who did not qualify for Velocity's 30-year, long-term loan, the company also began originating short-term, interest-only loans. Even though these short-term loans presented greater risk, Velocity assured investors that its "disciplined" underwriting process allow the company to avoid loaning to troublesome borrowers, while still maximizing profits.

As many large businesses do, Velocity went public. After more than a year and several amendments, Velocity filed its Registration Statement on Form S-1 with the SEC on January 6, 2020. The SEC declared the Registration Statement effective on January 16, 2020. And on January 17, 2020, Velocity filed its final Prospectus with the SEC.

But various statements in Velocity's offering materials were false or materially misleading. First, Defendants extoled the virtues of its underwriting practice through its use of "disciplined due diligence" and propriety data. (FAC ¶ 28). Although Velocity asserted that its underwriting practices would position the company for "sustainable, long-term growth" and offer the company key "competitive advantages," in reality, Velocity had begun issuing loans to high-risk borrowers. (FAC ¶ 37). This caused its percentage of nonperforming loans—loans that are 90 or more days past due, in bankruptcy, or in foreclosure—to be higher than other lenders. It was therefore misleading for Defendants to tout Velocity's underwriting practice, but not disclose that "those same practices were allowing riskier loans than the Company had historically issued to be made, resulting in a higher, and growing percentage of non-performing loans in Velocity's portfolio." (FAC ¶ 38).

Second, it was misleading for Defendant to laud the overall growth of its loan portfolio, but not disclose that the growth was fueled by riskier short-term interest loans—and that a significant portion of the portfolio had become nonperforming. Finally, the offering materials misleadingly touted the favorable market conditions that Velocity could seize upon, even though the coronavirus was set to disrupt the entire real estate market.

### III.    JUDICIAL STANDARD

####     A.    Rule 12(b)(6)

To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges enough facts to permit a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

### A. Judicial Notice

When ruling on a 12(b)(6) motion to dismiss a § 10(b) action, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, [1] documents incorporated into the complaint by reference, and [2] matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

Defendants request that the Court consider certain documents referenced in Plaintiffs' FAC under the incorporation by reference doctrine and take judicial notice of certain publicly available documents. Among these documents are (1) Velocity's Form S-1 Registration Statement, which was filed with the SEC on January 6, 2020 (ECF No. 45-1); Form 10-K filed on April 7, 2020 (ECF No. 45-9); and Investor Conference Call Transcript on May 13, 2020 (ECF No. 45-11). Plaintiffs did not oppose Defendants' request for judicial notice.

"A court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2016) (internal citation omitted). Documents on file in federal or state courts are considered undisputed matters of public record. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted). Federal courts routinely take judicial notice of press releases, news articles, and SEC filings in securities complaints. *See, e.g., Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1108–09 (N.D. Cal. 2003) (judicially noticing SEC filings and press releases); *Brodsky v. Yahoo!, Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (judicially noticing press releases and news articles). Thus, Velocity's Form S-1 Registration Statement, filed with the SEC on January 6, 2020 (ECF No. 45-1); Form 10-K filed on April 7, 2020 (ECF No. 45-9); and Investor Conference Call Transcript on May 13, 2020 (ECF No. 45-11) are subject to judicial notice.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

### B. Plaintiff's Claim for Securities Fraud Under Section 11

Plaintiff brings his first claim for violating Section 11 of the Securities Act of 1933 against all Defendants.

Section 11 creates a private right of action for any purchaser of a security if any part of the registration statement, "when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ." *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting 15 U.S.C. § 77k(a)). To prove liability, a plaintiff must show "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Stac*, 89 F.3d at 1403–04. Any claim under Section 11 "must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke v. Capitol Bankcorp, Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009). "No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Stac*, 89 F.3d at 1404.

And unlike other securities causes of action, Section 11 claims need only satisfy the ordinary notice pleading standards of Rule 8(a). *In re Daou Sys.*, 411 F.3d 1006, 1027 (9th Cir. 2005). But when the allegations are "grounded in fraud" or "sound in fraud," they must satisfy the particularity requirement of Rule 9(b). *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)).

Plaintiff bases his Section 11 claim on three alleged misrepresentations: (1) that Velocity mischaracterized the risks of its underwriting practices; (2) the Statement failed to inform investors about Velocity's rising portfolio of nonperforming loans; and (3) the Statement distorted the real estate market's conditions and Velocity's ability to capitalize on it. Plaintiffs affirm that none of their allegations are grounded in fraud, meaning Rule 8(a)'s pleading requirement applies, not Rule 9(b)'s heightened standard. (FAC ¶¶ 76, 83). The Court addresses each of these misrepresentations in turn.

#### 1. *Underwriting Practices*

Plaintiff alleges that statements highlighting Velocity's underwriting prowess were misleading because, in reality, Defendants had loosened its so-called "disciplined" practice to allow a growing portion of Defendants' loan portfolio to include short-term loans to high-risk borrowers. (*Id.* ¶ 38). This left the company susceptible to economic downturns. Plaintiff identifies the following statement as misleading:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

> Our underwriting approach focuses on generating attractive returns while minimizing credit losses and is enhanced by automation through the extensive use of customized systems to power automation and drive our use of data analytics. We apply the same disciplined due diligence and underwriting process to all loans we review, regardless of whether they are originated or acquired. Our asset-driven underwriting philosophy encompasses property level due diligence, including lease and rent reviews, local market liquidity and trend assessment and a rigorous valuation process. In addition, we perform individual borrower diligence, including credit review, evaluation of experience and asset verification. We believe our extensive access to proprietary data gives us a differentiated perspective and underwriting ability.

(FAC ¶ 37).

Defendants offer two arguments in retort. First, the statements are not actionable because they are mere "puffery." Second, Defendants cannot be liable because they reported that their underwriting practice included these higher-risk loans.

          a.     *These statements constitute nonactionable "puffery"*

The Ninth Circuit has held that statements of mere corporate puffery—"vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers"— are not actionable because investors "know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)).

Plaintiff argues that the statements are not "puffery" because they concern the crux of Velocity's business. (Opp'n at 9, ECF No. 50). Plaintiff's interpretation of this rule would seemingly insulate any statement about Velocity's underwriting practice from being considered puffery. The Court disagrees with such a broad interpretation.

Caselaw shows that even statements about a corporation's core business may be nonactionable puffery. For example, in *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206–07 (9th Cir. 2016), a loan company—like Velocity—boasted about the "overall credit quality of the loan portfolio," and that the "strong credit culture" and "integrity" of its underwriting practice allowed it to "limit its exposure to problem credits." The Ninth Circuit determined that these statements could not constitute actionable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

representations. *Id.* Likewise, in *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009), a company's statements asserting the "highly disciplined" nature of its risk management processes could not support securities violations. Finally, in *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1249–50 (N.D. Cal. 2019), a technology company that had touted the efficacy of its marketing campaign by emphasizing its "comprehensive clinical training, practice-based marketing support, as well as patient leads," which would increase the company's prospects for revenue, were also considered nonactionable. *Id.* at 1257. *But see In re New Century*, 588 F. Supp. 2d 1206, 1226 (C.D. Cal. 2008) ("repeated assurances of strong credit quality and strict underwriting practices" were not mere puffery when those statements were set against detailed allegations that the company had "utterly failed to meet those standards").

The statement Plaintiff identifies in the offering materials are nonactionable puffery. The statements extolling Velocity's application of "disciplined due diligence" to its underwriting practice are like the company in *ECA* describing its risk management practice as "highly disciplined." In *ECA*, those descriptions were deemed puffery. And while Plaintiff makes much ado about how Velocity described its underwriting practices as focused on "minimizing credit losses," that is no different from the company in *Lloyd* stating that its underwriting practice allowed it to "limit its exposure to problem credits." Lastly, the statements describing the use of its automated systems and data analytics are like the nonactionable statements of "comprehensive clinical support," and "practice-based marketing support" in *Restoration Robotics*.

Because Plaintiffs' identified statements about Defendants' underwriting practice is corporate puffery, they cannot support a Section 11 claim.

   2. *Defendants' Rising Portfolio of Nonperforming Loans*

The Court now turns to the allegation that Defendants impermissibly created a "rosy picture" of Velocity's financial health by excluding information about its increasing rate of nonperforming loans from its offering materials.

Plaintiff bases this claim on several fronts. First, Defendants omitted the fact that the rate of non-performing loans had "approximately doubled year over year and was accelerating at the time of the IPO." (FAC ¶ 42). Second, Defendants underrepresented the true percentage of non-performing loans by claiming that they constituted 5.96% of the total loans, when they in fact made up 6.41% of the total loan portfolio. (*Id.* ¶ 43). Third, Defendants failed to reveal the true extent of loans that were fewer than 90 days past due. (*Id.* ¶ 45). Finally, Defendants failed to report that their rapid loan origination growth was driven mostly by origination of short-term, interest-only loans. (*Id.* ¶ 47).

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

      *a.*    *Nonperforming loan rate accelerating at the time of the IPO*

    The Court begins with Plaintiff's first allegation—that Defendants hid that Velocity's rate of nonperforming loans had "doubled" and was "accelerating" at the time of the IPO. Plaintiff relies on two charts in his FAC.



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |



(FAC ¶ 42).

    There are two issues with this allegation. First, Plaintiff's own chart shows an upward trend in nonperforming loans. And Defendants also included that information in its S-1. See below:

| Portfolio Statistics(1) | September 30, 2019 | December 31, 2018 | 2017 | 2016 |
|---|---|---|---|---|
| | | ($ in thousands) | | |
| Total loans(2) | $ 1,928,208 | $1,631,326 | $1,295,567 | $1,038,033 |
| Loan count | 6,039 | 5,171 | 4,136 | 3,243 |
| Average loan balance(3) | $ 319 | $ 315 | $ 313 | $ 320 |
| Weighted average loan-to-value(4) | 65.4% | 63.8% | 64.4% | 64.5% |
| Weighted average coupon(5) | 8.71% | 8.56% | 8.33% | 8.23% |
| Nonperforming loans (UPB)(6) | $ 118,106 | $ 95,385 | $ 74,943 | $ 42,498 |
| Nonperforming loans (% of total) | 6.13% | 5.85% | 5.78% | 4.09% |

(S-1 at 24). The chart verifies the upward trajectory of the nonperforming loans by percentage—4.09% in 2016 to 6.13% in September 30, 2019—but also in total dollar value—$42,498 million to $118,106 million.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

Second, as Defendants point out, the "doubling" Plaintiff references stems from a comparison between the first ("1Q20") and second ("2Q20") quarter of 2020—the completion of both quarters occurred after the IPO. Because Section 11 liability only attaches for misrepresenting information that was available when the offering materials became effective, the data from 1Q20 and 2Q20 should be disregarded. Instead, the comparison that should be made from Plaintiff's chart is between 2Q19 and 4Q19.[1] *In re Stac*, 89 F.3d at 1403–04 ("Section 11 creates a private remedy for any purchase of a security if any part of the registration statement, *when such part became effective,* contained an untrue statement of a material fact . . . .") (own emphasis added). From the chart, the total percentage change from 2Q19 to 4Q19 does not double; it just slightly increases from 6.41% to 6.88%.

For these reasons, Plaintiff has not alleged that Defendants hid the fact that nonperforming loans had "doubled" or was "accelerating" in the offering materials.

          b.      *Misrepresenting the true percentage of total nonperforming loans*

Next, the Court turns to the allegation that Defendants misrepresented the percentage of total nonperforming loans as 5.96%, when it was really 6.41%. Defendants argue that the cited numbers cannot support a Section 11 claim because they do not appear in the final offering materials. The Court agrees with Defendants.

Plaintiffs obtained their numbers from Velocity's pre-effective S-1 *draft* and its 10-Q for 2Q20, which was filed three months after the IPO. (Mot. Dismiss at 10–11 n.7). Neither of which was part of the registration statement *when it became effective. In re Stac*, 89 F.3d at 1403–04. Thus, there is no cause of action for information that relies on information from an S-1 draft and post-IPO data.

          c.      *Rising delinquencies rate that were not yet 90 days old*

Now the Court turns to Plaintiff's allegation that Defendants "failed to disclose the true extent of loans held that were delinquent but fewer than 90 days past due." (FAC ¶ 45). Plaintiff theorizes that since Velocity considers loans "nonperforming" after payments have been delinquent for 90 days, and Defendants would later reveal a higher rate of nonperforming loans in its 10-K in April, it must have

---

[1] The Court notes relying on data from 4Q19 may not have been feasible at the effective date because the quarter would have only ended two weeks before, and Defendants would have needed time to audit the data before including it in any public materials.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

known—at the time of the IPO—of rising delinquencies rates of loans that were less than 90 days past due. Plaintiff spotlights this chart:



As a starting point, any upward "trend" from 1Q2020 and 2Q20 is irrelevant because that information would have been unavailable to Defendants at the time of the IPO. And from Plaintiff's own chart and Defendants S-1, Defendants broke down the rate of delinquent loans in detail from 30-59, 60-89, and 90+ days past due up until September 2019. See below:

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

*Credit Quality — Loans Held for Investment*

The following table provides delinquency information on our held for investment loan portfolio as of the dates indicated:

| ($ in thousands) | September 30, 2019 UPB | % | December 31, 2018 UPB | % | December 31, 2017 UPB | % | December 31, 2016 UPB | % |
|---|---|---|---|---|---|---|---|---|
| Current | $ 1,509,537 | 85.9% | $ 1,358,043 | 87.5% | $ 1,138,749 | 88.3% | $ 920,070 | 88.7% |
| 30-59 days past due | 110,484 | 6.3 | 78,848 | 5.1 | 59,207 | 4.6 | 53,102 | 5.1 |
| 60-89 days past due | 34,729 | 2.0 | 23,881 | 1.5 | 18,467 | 1.4 | 22,364 | 2.2 |
| Nonperforming loans: | | | | | | | | |
| 90+ days past due | 20,894 | 1.2 | 16,181 | 1.0 | 22,114 | 1.7 | 25,111 | 2.4 |
| Bankruptcy | 9,626 | 0.5 | 5,901 | 0.4 | 5,631 | 0.4 | 2,916 | 0.3 |
| In foreclosure | 71,441 | 4.1 | 69,012 | 4.5 | 45,571 | 3.5 | 14,294 | 1.4 |
| Total nonperforming loans | 101,961 | 5.8 | 91,094 | 5.9 | 73,316 | 5.7 | 42,321 | 4.1 |
| Total loans held for investment | $ 1,756,711 | 100.0% | $ 1,551,866 | 100.0% | $ 1,289,739 | 100.0% | $ 1,037,857 | 100.0% |

Loans that are 90+ days past due, in bankruptcy, or in foreclosure are not accruing interest and are considered nonperforming loans. Nonperforming loans were $102.0 million, or 5.8% of our held for investment loan portfolio as of September 30, 2019, compared to $91.1 million, or 5.9% as of December 31, 2018, $73.3 million, or 5.7% as of December 31, 2017, and $42.3 million, or 4.1% of the loan portfolio as of December 31, 2016. We believe the significant equity cushion at origination and the active management of loans will continue to minimize credit losses on the resolution of defaulted loans and disposition of REO properties.

(S-1 at 71) (own highlighting added). Defendants also included "Estimates for the Year Ended December 31, 2019" in their S-1, which included the estimated rate of nonperforming loans as between "6.50% and 6.90%."[2] (S-1 at 20).

Thus, Plaintiff's primary gripe, is that Defendants omitted the same granular breakdown of 30-59, 60-89 days, and 90+ days data for 4Q19 that it had included for previous quarters. Plaintiff, however, has not alleged that Defendants would have been able to verify this more particular information within the time frame between the end of the quarter, December 31, 2019, and the final filing date of the S-1, January 6, 2020—which was only 6 days. Even if Plaintiff had alleged so, the omission of the more specific data is was not misleading since Defendants still provided an estimate for the overall delinquency rate, and any "adverse" trend in delinquency rates can be seen in the previous quarters. (*See* 10-K at 473).

Finally, Plaintiff suggests that a May 13, 2020 conference, call with Velocity executives establishes that Defendants knew about the increased nonperforming loan growth at the time of the IPO:

> On the next slide, talking about our loan portfolio performance and here you can see here's the non-performing. So the lower left, you see, our non-performing did

---

[2] After verifying its data, Velocity's estimate proved correct. The rate of nonperforming loans turned out to be 6.88%. (10-K at 473).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

> go from 6.88% to 8.17%, So non-performing did rachet it up in 01. And as Chris had mentioned earlier in his overview, part of that was expected.
>
> Yes, we had mentioned again on the road show and all that, a lot of our portfolio is very new portfolio, our originations have really grown over say the last three years. So as that portfolio seasons, we expect certain amount of non-performing growth as the portfolio seasons. So some of that portfolio, non-performing growth, you would expect and then again another part of it is due to the COVID starting to hit in 01.

(Investor Call Transcript at 6). The call suggests that some nonperforming loan growth was expected in the first quarter of 2020. That would have been apparent from the disclosed material about the previous quarters. The total nonperforming rate had increased from 4.1% in December 2016, to 5.7% in 2017, to 5.9% in 2018, and to 5.8% by September 2019. Defendants estimated that the final nonperforming percentage to be between "6.50% and 6.90%" for the fourth quarter of 2019. (S-1 at 20, 71).

Still, Plaintiff contends that the transcript reveals that Defendants knew about the "staggering" rate of nonperforming loans, which stood at 9.9% at the end of 2020, at the time of the IPO. Plaintiff bases this allegation on Velocity's acknowledgement that some growth of growth of nonperforming loans was "expected" because of "ordinary portfolio seasoning," (FAC ¶ 65). Yet the transcript's next line states that the part of the increase is due to coronavirus pandemic, not from the predicted seasoning of portfolio growth.

Taken together, there is no plausible inference that Defendants anticipated the rate of nonperforming loans to have increased to the extent that it did prior to the IPO. Instead, the transcript supports the inference while some growth of nonperforming loans was expected, there was also an unexpected increase due to the coronavirus pandemic.

d. *Velocity's increased use of short-term, interest-free loans*

Next, Plaintiff alleges that Defendants did not divulge that its overall loan portfolio growth was mainly driven by Velocity's increased use of short-term, interest-free loans to high-risk borrowers. As evidence, Plaintiff points to an April 2020 press release discussing Velocity's 4Q19 results which stated, "[l]oan origination volume growth was primarily driven by a 103 percent year-over-year growth in short-term loans." (FAC ¶ 47).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

But Defendants did reveal its increased use of short-term loans. In fact, the top of Page 34 of the S-1 states, "***A significant portion of our loan portfolio is in the form of investor real estate loans which are subject to increased risks***." (S-1 at 34) (emphasis in original). Further down, Defendants explain that the company had "began originating short-term, interest-only loans" in March 2017. They also include a chart noting this change (describing the short-term loans as those "held for sale") (own emphasis added):

| Consolidated Statements of Financial Condition Data | September 30, 2019 | December 31, 2018 | December 31, 2017 | December 31, 2016 |
|---|---|---|---|---|
| | | (in thousands) | | |
| **Assets** | | | | |
| Cash and cash equivalents | $ 8,849 | $ 15,008 | $ 15,422 | $ 49,978 |
| Restricted cash | 3,152 | 1,669 | 305 | 1,766 |
| Loans held for sale, net | 170,440 | 78,446 | 5,651 | — |
| Loans held for investment, net | 1,775,935 | 1,567,408 | 1,299,041 | 1,039,401 |
| Loans held for investment, at fair value | 2,936 | 3,463 | 4,632 | 7,278 |
| Total loans, net | 1,949,311 | 1,649,317 | 1,309,324 | 1,046,679 |

(S-1 at 24). Plaintiff does not dispute that Defendants disclosed this information. Instead, he argues that the disclosures were inadequate because the chart and accompanying narrative explaining the increase used of short-term loans appear pages apart. (Opp'n at 7).

Although the overall determination of the adequacy of a disclosure should generally left to the trier of fact, if reasonable minds could not disagree whether the challenged statements were misleading, then a court may dismiss the claims on a motion to dismiss. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005). Defendants here disclosed the information in narrative form and with data. Taken together, they reflect the information stated in the April 2020 press release—that these short-term loans were riskier and that they were becoming an increasing part of Velocity's overall portfolio. Since reasonable minds could not disagree that the Velocity had not only begun, but increased, its use of short-term, interest-free loans, there is no basis for a Section 11 claim.

Plaintiff also contends that the disclosure was misleading because they describe hypothetical risks, rather than realized risks. Not so. A title-portion of the disclosure states, "[l]oans on properties in transition ***will involve a greater risk of loss*** than traditional investment-grade mortgage loans with fully insured borrowers." (S-1 at 34) (own emphasis added). Since the statement is written in the affirmative, there is nothing hypothetical about the risks of the short-term loans.

Thus, Defendants disclosed Velocity's use of these riskier, short-term loans in its offering materials, and there is no Section 11 claim.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

      3.    <u>*Defendants' Statement Optimistic View of the Real Estate Market*</u>

Lastly, Plaintiff avers that Defendants painted a "rosy" picture of the real estate market when the market was really set to collapse because of the coronavirus pandemic.

Defendants pinpoint the following portion of the offering materials:

> We believe that there is a substantial and durable market opportunity for investor real estate loans across 1-4 unit residential rental and small commercial properties, and that our institutionalized approach to serving these fragmented market segments underpins our long-term business strategy. Our growth to date has validated the need for scaled lenders with dedication to individual investors who own ten or fewer properties, a base which we believe represents the vast majority of activity across our core market.

(FAC ¶ 49).

Defendants counter that those statements were not misrepresentations because: (1) they are nonactionable puffery; (2) Velocity could not have foreseen the effect of the pandemic at the time of its IPO; and (3) the Statement contained adequate disclosures about the possibility of economic disasters.

      a.    *These statements were also puffery*

Generally, securities claims may not hinge on a corporation's optimistic market projections. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996) ("The challenged statements were nothing more than inactionable forecasts, and they do not give rise to a securities fraud claim."). In *Police Retirement System*, a company informed investors that "the opportunity for system placement at hospitals 'is still very, very large'"; "that there is potential growth in the dVP market"; and that the company "will come out stronger" and in "a pretty good position." 759 F.3d at 1060. The Ninth Circuit held that these statements were no more than "feel good speak" that characterizes "non-actionable puffing." *Id; see also In re Solarcity Corp. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) (finding statements such as "[w]e are actually extremely bullish for the US markets" and "I think we'll see a lot more growth in Q3, Q4 based on where the jobs are in progress now" to be nonactionable).

Velocity's statement about the real estate market are no different from the nonactionable statements in *Police Retirement System*. Velocity stated that "there is a substantial and durable market

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

opportunity for investor real estate loans" is like the company in *Police Retirement System* stating, "that there is potential growth in the dVP market." In both cases, the companies propound the favorable state of their respective markets, and the companies' ability to capitalize on them.

Thus, like the statements about Velocity's underwriting practice, these statements cannot form the basis of a Section 11 securities claim.

**C.      Plaintiff's Claim for Failure to Disclose Information Required by Items 303 and 105**

Plaintiff also avers that Defendants violated Section 11 by failing to meet their disclosure obligations under Items 303 and 105 of SEC Regulation S-K. (FAC ¶ 53). The Court disagrees.

   1.      *Item 303*

"[A]llegations which sufficiently state a claim under Item 303 also state a claim under Section 11." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998). Item 303 requires that registrants, "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii).

Under the SEC's 1989 release interpreting Item 303(a), "[a] disclosure duty exists where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *Steckman*, 143 F.3d at 1296–97. Thus, Item 303 requires disclosure when there is knowledge of an adverse trend, material impact, and that "the future material impacts are *reasonably likely to occur* from the present-day perspective." *Id.* at 1297.

Plaintiff alleges that Defendants failed to disclose: (1) its relaxed underwriting practices had led to riskier loans which in turn subjected Velocity to larger portion of nonperforming loans; (2) its loan portfolio growth was driven mainly by an increase in the origination of riskier, short-term loans; (3) Velocity had experienced a far higher percentage of nonperforming loans; and (4) that there was uncertainty in the real estate market given the presence of the coronavirus pandemic. (FAC ¶ 56).

   *a.      Disclosure of underwriting practice, use of riskier-short, term loans, and increase in nonperforming loans*

The Court addresses the first three allegations together because they are intertwined. In effect, Plaintiff alleges that Defendants did not disclose that it had (1) relaxed its underwriting practice, which

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

led it to (2) an increase of use of riskier, short-term loans in its business, and that led to (3) an increase in nonperforming loans.

But as discussed above, Defendants included its increased use of the short-term loans in its offering materials, so there was no relaxation of its underwriting practice. (S-1 at 34) ("*A significant portion of our loan portfolio is in the form of investor real estate loans which are subject to increased risks*.") (emphasis in original). As explained above, Plaintiff contested not that this information was included but the sufficiency of the disclosure. (*See* Opp'n at 7).

And Defendants published a detailed chart related to nonperforming loans. (S-1 at 24). Again, Plaintiff's issue was not that the information was not disclosed—Defendants included estimates of the nonperforming loans. Instead, Plaintiff only sought a more granular breakdown of the data. Since the trends of increased short-term loans and nonperforming loans were disclosed, there is no Item 303 violation.

        b.    *Uncertainty in the real estate market with the presence of the coronavirus pandemic*

Plaintiff alleges that Defendants should have disclosed the uncertainty in the real estate market because of the coronavirus pandemic. Yet Plaintiff does not allege that Defendants would or could have known the extent of the coronavirus pandemic, or even the presence of the disease in America, at the time of the IPO. Thus, there would have been no need for Defendants to include any disclosure about the pandemic in its offering materials.

    2.    <u>Item 105</u>

Plaintiff bases their claim of violation of Item 105 on the same allegations for Item 303. Item 105 requires a "discussion of the material factors that makes an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105.

To the extent that Plaintiff bases his Item 105 violations on the loosening of Velocity's underwriting practice, increase in short-term loans, and upward trend of nonperforming loans, the Court dismisses those claims for the same reasons it dismissed the Item 303 violations.

Plaintiff also argues that Velocity "did not adequately disclose COVID risks." At minimum, Defendants disclosed that its business may be affected by "changes in national, regional or local economic conditions or specific industry segments," which may be caused by "acts of God." (S-1 at 36).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06780-RGK-PLA | Date | January 25, 2021 |
|---|---|---|---|
| Title | *Edward A. Berg v. Velocity Financial, Inc. et al* | | |

And as discussed above, Plaintiff has not adequately alleged how Defendants would have known about the coronavirus risks at the time of the IPO to include a more specific warning. Thus, Defendants did not need to include more specific disclosures about the coronavirus pandemic.

There is therefore no Item 105 violation.

**D.     Plaintiff's Claim for Violating Section 15**

Section 15 of the 1933 Securities Act imposes liability upon every person who controls any person liable under Section 11 of the Act. *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029–30 (9th Cir. 2005)). A plaintiff must establish: (1) a primary violation of the pertinent federal securities laws, and (2) that defendants exercised actual power or control over the primary violator. *In re Charles Schwab*, 257 F.R.D. at 550 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

Because Plaintiff has not adequately pled a primary violation of Section 11, the Section 15 claim must also fall. *See In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 979 (N.D. Cal. 2010) (dismissing Section 15 claim for failure to adequately allege a Section 11 claim). Thus, the Court dismisses Plaintiff's Section 15 claim.

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** Defendants' Motion.

**IT IS SO ORDERED.**

_____ : _____